## THOMPSON HEATING CORPORATION, Appellant v HARDWARE INDEMNITY INSURANCE CO. OF MINNESOTA, Appellee.

Ohio Appeals, 1st District, Hamilton County.

No. 6226. Decided February 23, 1943.

DeCamp, Sutphin & Brumleve, Cincinnati, for appellant.
Dolle, O'Donnell & Cash, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

This appeal raises the single question of whether the plaintiff is the real party in interest as required by §11241 GC. The trial court held that it was not.

The plaintiff was the insured in two policies of indemnity insurance in force on the 21st day of June, 1940. The defendant was the insurer in one, and its policy provided for indemnity against loss not to exceed $10,000.00 to any one person, by reason of personal injuries suffered by any person, by reason of the operation of a certain commercial truck including the loading and unloading thereof in the performance of insulating contracts. The insurer in the other policy was Liberty Mutual Insurance Company and that policy indemnified the plaintiff against loss not exceeding $5,000.00 to any one person, from injuries to persons in the operation of its business of installing heating and insulating equipment.

Each policy contained a provision that if the insured carried other indemnity against the same risk, any loss should be apportioned among the insurers in the ratio that the maximum liability of each insurer should bear to the total liability of all insurers.

On June 21st, 1940, the plaintiff was engaged in insulating a building and in doing so parked the truck mentioned in the policy

issued by the defendant to it in the street near the curb and by means of a hose was pumping insulating material from the truck into the building, and while so doing a pedestrian passing along the sidewalk tripped on the hose, fell to the sidewalk and was injured. The injured person asserted a claim for damages for her physical injuries and expenses against the plaintiff. The plaintiff notified both insurers of this claim as required by the terms of the policies and requested each to defend and protect it against loss.

The Liberty Mutual Insurance Company admitted that the terms of its policy required it to defend and indemnify, but only to the extent of its proportion of any loss not exceeding the limit of its liability but the defendant (Hardware Indemnity Insurance Company) denied that the loss, if any, resulted from a risk against which it had insured and, therefore, repudiated all liability.

Negotiations for a settlement with the injured person were instituted which finally resulted in an offer to accept $2,000.00 in full settlement. The plaintiff and Liberty Mutual Insurance Company were of the opinion that it would be to the advantage of both the insured and the insurers to accept the offer, but the insured did not have the money with which to make the settlement, and the defendant had repudiated all liability. The Liberty Mutual Insurance Company did have the means and wanted advantage to be taken of the offer, but was unwilling to waive its claim that its liability should be reduced proportionately because of the existence of the defendant's policy. In that situation, an agreement was entered into between the plaintiff and Liberty Mutual Insurance Company, which, after omitting preliminary recitals, ran:

"NOW, THEREFORE, it is agreed by and between Liberty Mutual Insurance Company and Thompson Heating Corporation that said Liberty Mutual Insurance Company will advance to Thompson Heating Corporation the sum of Two Thousand ($2,000.00) Dollars as a loan, to enable Thompson Heating Corporation to carry out the settlement so offered by Lida A. McDade, subject to the terms and conditions hereinafter set forth.

"It is expressly understood and agreed that the payment of said sum of Two Thousand ($2,000.00) Dollars by Liberty Mutual Insurance Company to Thompson Heating Corporation is not in satisfaction of any obligation of Liberty Mutual Insurance Company under the policy of liability insurance issued by it to Thompson Heating Corporation, but is made solely as a loan in consideration of the covenants of Thompson Heating Corporation hereinafter set forth.

"And in consideration of said loan, Thompson Heating Corporation undertakes and agrees to commence an action in a court of competent jurisdiction against Hardware Indemnity Insurance Company of Minnesota, in order to obtain a judicial determination of the question of whether or not said Hardware Indemnity In-

surance Company of Minnesota is legally liable, under the policy of automobile liability insurance issued by it to Thompson Heating Corporation, to reimburse Thompson Heating Corporation for two-thirds (2/3) of the amount of the settlement to be made with the proceeds of said loan.

"It is further understood and agreed that the expense of such action will be borne by Liberty Mutual Insurance Company and that Thompson Heating Corporation will be under no obligation to pay such legal expense incident to the prosecution of said action.

"It is also understood and agreed that, if in the event of the successful prosecution of said action Thompson Heating Corporation recovers any sum of money from Hardware Indemnity Company of Minnesota, Thompson Heating Corporation will pay any such sum so recovered to Liberty Mutual Insurance Company in full and final satisfaction of said loan hereinbefore referred to.

"It is further understood and agreed that neither this agreement nor any acts of the parties pursuant thereto shall constitute an admission of liability on the part of Liberty Mutual Insurance Company that it is obligated to Thompson Heating Corporation for any greater proportion of the loss incurred by reason of the settlement with Lida A. McDade than one-third (1/3) thereof.

"It is also understood and agreed that, if in the event of the unsuccessful prosecution of said action by Thompson Heating Corporation no recovery is had against said Hardware Indemnity Insurance Company, then said Liberty Mutual Insurance Company will pay the whole loss of Two Thousand ($2,000.00) Dollars and no payment need be made to it by Thompson Heating Corporation in satisfaction of said loan."

The Liberty Mutual Insurance Company furnished the funds in accordance with this agreement, and the plaintiff made the settlement with the injured person.

This action is upon the insurance policy to recover from the defendant $1333.34 as its proportion of the loss represented by the settlement on the theory that the loss resulted from a risk insured against by the defendant.

In the defendant's answer it admits all essential allegations to recovery except that the policy of Liberty Mutual Insurance Company contained a provision for proportionate insurance, or that either it or that company was liable for the loss, or that the plaintiff was liable to the injured person or the extent of the loss. These, it denied. In addition, it pleaded the substance of the agreement between the plaintiff and Liberty Mutual Insurance Company and alleged that the language used therein was a mere device employed by the contracting parties to conceal a payment and discharge under guise of a loan so as to conceal the real party in interest, and that the plaintiff is not the real party in interest in this litigation. The reply admitted the entering into the agreement and the mak-

ing of the loan and placed in issue the other allegations of the answer.

At the trial, the agreement between the plaintiff and Liberty Mutual Insurance Company was introduced in evidence and thereupon arguments were heard and the court reached the conclusion that the plaintiff was not the real party in interest, had no right to sue, that it was unnecessary to decide the other issues, and entered judgment dismissing the action at the plaintiff's costs. That is the judgment from which this appeal was taken.

The trial court construed the agreement between the plaintiff and Liberty Mutual Insurance Company as a payment of the latter's obligation notwithstanding the explicit language of loan and predicated its judgment that this plaintiff was not the real party in interest and had no right to sue upon that construction of that agreement. The conclusion to disregard the words of the agreement was based on the provision that the plaintiff was not obligated to repay unless it recovered an equivalent amount from the defendant—the other insurer.

When the plaintiff and the defendant entered into the contract, evidenced by the indemnity policy. a chose in action was created. and, to the extent that it obligated the defendant, the plaintiff as the obligee was the owner of the chose. And upon a failure of the defendant to perform its obligation a cause of action arose in favor of the plaintiff, and it continued to be the owner unless and until it was extinguished or transferred. For the purpose of this appeal we must assume that a cause of action did arise in favor of the plaintiff. Was it transferred or extinguished by the agreement between the plaintiff and Liberty Mutual Insurance Company? As the terms of the agreement create the relation of lender and borrower, and in express terms negative any intention to extinguish the defendant's obligation or to transfer the right to enforce it, it would seem that this intent so clearly expressed should be given effect unless some controlling statute or rule of public policy otherwise expressed prevents it.

It is urged that §11241 GC, requiring that "An action must be prosecuted in the name of the real party in interest" supplies the barrier to giving effect to the intent of the parties. That provision undoubtedly is intended to prevent the prosecution of actions by persons who have no right, title, or interest in the cause and to require the actual plaintiff for relief to prosecute the action. It does not mean that no one other than the plaintiff may not have some interest in the result of the action. The test is whether the plaintiff has a real interest in the result. It owned the chose in the beginning. It never in terms parted with title to it. It was entitled to more or less from Liberty Mutual Insurance Company, dependent upon whether its claim against the defendant was enforceable. It received the larger sum from the Liberty Mutual Insurance Company as a result of its

agreement to secure a judicial determination of the merits of the issue of whether the defendant was liable on its policy. The consideration was not paid to induce the plaintiff to bring an action to determine a procedural question of law. This action was instituted in compliance with that agreement. Suppose it be determined in this action that the plaintiff has no right to prosecute this action and secure a judicial determination of the merits of the issue of whether the defendant is liable. That is what the defendant asks us to hold. Such a conclusion would destroy the whole plan and the purpose of the parties would be frustrated. In that event. would the plaintiff be under any liability to Liberty Mutual Insurance Company? We believe under such circumstances the plaintiff would be under a quasi-contractual duty imposed by law to make restitution. In the Restatement, Restitution, §48, p. 196, the rule distilled from the cases is stated as follows:

"Unless otherwise agreed and except as stated in §52, a person is entitled to restitution for a benefit which he has conferred upon another as the whole or part of his performance of a contract with another, under the erroneous belief induced by a mistake of law. either shared by both or known to the other, that the manifested basic purpose of the contract can be carried out or is thereby achieved. If the purpose fails in part and the benefit is severable, there can be restitution pro tanto."

We applied that principle in the case of **Automobile Ins. Co. v Eastern Machinery Co., 63 Oh Ap 203,** in which we allowed a recovery by an insurer of the amount paid to a shipper upon its failure to prosecute a carrier as it had agreed to do. The consideration had totally failed and the defendant had been unjustly enriched.

However, we do not believe the rule stated in §11241 GC, requires us to defeat the intention of the parties. It was only intended to require the plaintiff to have more than the bare legal title. Where a beneficial interest exists it furnishes no rule to measure the extent of the required beneficial interest.

It is apparnt that the parties had a reason for leaving the title of the chose in the plaintiff other than to enable it to prosecute this action for the sole benefit of Liberty Mutual Insurance Company. The plaintiff has a very substantial interest in securing a judicial determination of the liability of the defendant in this action. A decision that it had no title and, therefore, could not prosecute this action would cause a total failure of consideration, require it to make restitution and leave the issue of the liability of both indemnitors and the extent thereof still undetermined. In that situation, the plaintiff would be obligated to make restitution. So it is not true that the plaintiff has nothing to gain or lose by the judgment in this case. This demolishes the thought that the in-

tent—actual or legal—of the parties was to finally terminate their jural relation by this agreement. If it were possible to disregard the expressed intent to the contrary, it certainly would do undisguised violence to their language to disregard the conditional and provisional intent emanating from the whole contract.

So we find that the plaintiff is not only the owner of the legal title to the chose, but also has an equitable or beneficial interest therein and is a real party in interest and entitled to maintain this action.

In Pomeroy on Code Remedies, at 106, the author says on this subject:

"It is now settled by a great preponderance of authority—that if the assignment is absolute in its terms so that by virtue thereof the entire apparent legal title vests in the assignee any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds—does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds."

If an assignee deriving and holding his title under such a provisional and conditional arrangement may sue in his own name, certainly, the original owner of the title to a chose should be entitled to sue on it notwithstanding a provisional and conditional agreement relating to the fruits of the action.

We believe the validity of contracts of this kind and the right of the plaintiff to maintain the action on the original chose is fully sustained by the case of Luckenbach v McCahan Sugar Refining Co., 248 U. S., 139, 1 A. L. R., 1522, and annotations. The first paragraph of the syllabus is as follows:

"1. Agreements between shippers and insurers after a loss that the latter shall adjust the loss by making a loan to the former, repayable to the extent only of any subsequent net recovery against the carrier, and that the insurers shall have the conduct of the suit against the carrier which the shippers agree to begin, are valid, where, by the bills of lading, the carrier is given the benefit of any insurance effected by the shippers if the carrier is liable. Sums paid over under such agreement should be regarded as loans or conditional payments, and not as absolute payments of the insurance, which, under the bills of lading. would relieve the carrier from liability to anyone."

See also: First National Bank v Lloyd's of London, 116 Fed. (2) 221, 132 A. L. R. 599.

The cases relied upon by appellee are clearly distinguishable. In Killmore v Culver, 24 Barb. (N. Y.) 656, the plaintiff had no interest whatever in the result of the action. That New York Courts do not regard the rule announced in that case as precluding a recovery, notwithstanding the fact that the plaintiff had entered into a contract such as here under consideration is shown by the reference in the annotation in 1 A. L. R., 1522, at 1530, et seq., to decisions of courts of that state permitting plaintiffs to recover and denying the validity of the contention of lack of interest.

In **Osborn v McClelland, 43 Oh St 284,** the plaintiff was the indorsee of a note for the sole purpose of suit. He had no interest in the result whatsoever.

In **Insurance Company v Carnahan, 63 Oh St 259,** the plaintiff prior to suing the Insurance Company, had assigned the claim and the court said at 266 that this assignment "does not appear to be contingent or in pledge, but is absolute." In the case at bar the language of the contract repels any inference of an assignment for any purpose.

Our conclusion is that the Court erred in holding that the plaintiff was not the real party in interest and in entering judgment dismissing the action at its costs.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, PJ., concurs.