[No. 34693. Department Two. May 14, 1959.]

HAROLD J. CLOW et al., Appellants, v. NATIONAL INDEMNITY COMPANY, Respondent.[1]

[1]Reported in 339 P. (2d) 82.

*Harley W. Allen*, for appellants.

*Minnick & Hahner*, for respondent.

ROSELLINI, J.—This is an appeal from a judgment of dismissal, entered at the conclusion of the plaintiffs' case. The dismissal was occasioned by the court's conclusion that both plaintiffs had disclaimed any financial interest in the action and were therefore not damaged. We are asked to determine the correctness of this appraisal of the case.

The action was brought by the plaintiff Harold J. Clow to recover indemnity in the amount of $3,000, which he had been compelled to pay in settlement of a claim made against him as a result of an automobile collision in which he had been at fault. This accident occured while Clow was driving a 1948 Mercury automobile on which he carried liability insurance with the plaintiff Farmers Insurance Exchange (hereafter referred to as Farmers). A few days before the accident, on April 15, 1952, Clow had transferred title to this automobile to a used-car dealer, in part payment for a 1952 Ford. On that same day, the Ford was found to be in need of certain repairs, which the dealer agreed to have made; and Clow was given the use of the Mercury while the Ford was under repair.

The dealer carried a garage liability policy with the defendant, National Indemnity Company. Coverage under

this policy was extended to all automobiles owned by the dealer and insured any person using one of these cars with the dealer's permission.

When suit was brought against Clow, defense of the action was tendered to Farmers, which association undertook the defense and eventually settled the case for $3,000, after notice to the defendant, which had refused the defense tendered to it and had disclaimed liability under its policy.

The $3,000 was paid to Clow under a "loan agreement," by the terms of which Clow was to prosecute an action against either the dealer or the defendant and was to repay only such sum as he might recover in that action. In performance of this agreement, this suit was brought. On motion of the defendant, Farmers was joined as a defendant. The complaint was thereafter amended and Farmers, as a coplaintiff, alleged that such rights as it had were subordinate to those of Clow, and asked that any damage recovered in the action be awarded to Clow. In its answer, the defendant denied liability and affirmatively alleged that it had no policy of insurance or contract with Clow, and further alleged that the claim against him had been paid in full by Farmers, in fulfillment of its contractual obligation.

As we understand the memorandum decision, the trial court was of the opinion that the loan agreement was a subterfuge, that the action should have been brought by Farmers to recover in its own right; and that, having failed to ask for this relief, it was precluded from recovering in the name of Clow even though it was a party to the action.

Counsel for the defendant admitted in open court that the policy which the defendant had issued to the dealer covered the accident in question, and further admitted that if Farmers had asked for the proper relief, the loss should have been prorated. Farmers, on the other hand, insists that it was liable only for any excess over other coverage and that the claim against Clow was fully covered by the policy issued by the defendant to the dealer.

The first question to determine is whether relief should be denied because the loan agreement was, in fact, a subterfuge as it was used in this case. Courts give effect to

agreements of this kind if the facts show that an actual loan was intended, even though the obligation to repay the loan was contingent. Examples of the many cases so holding are *Luckenbach v. W. J. McCahan Sugar Refining Co.*, 248 U. S. 139, 63 L. Ed. 170, 39 S. Ct. 53, 1 A. L. R. 1522; *Phillips v. Clifton Mfg. Co.*, 204 S. C. 496, 30 S. E. (2d) 146, 157 A. L. R. 1255; *Merrimack Mfg. Co. v. Lowell Trucking Corp.*, 182 Misc. 947, 46 N. Y. S. (2d) 736; *Koop v. General American Transp. Corp.* (N. Y., City Court), 47 N. Y. S. (2d) 628; *Thompson Heating Corp. v. Hardware Indemnity Ins. Co. of Minn.*, 72 Ohio App. 55, 50 N. E. (2d) 671. The rule is stated in 46 C. J. S. 140, § 1201, and annotated in 157 A. L. R. 1261. If the "loan" was intended as payment, the insurer becomes subrogated to the rights of the insured against third parties; if it were actually intended as a loan, the insurer is not subrogated and the action may be brought by the insured. The only objection to such agreements that we have been able to ascertain is that they may permit an action to be brought by one who is not the real party in interest. No other reason for denying them their intended effect has been brought to our attention. The defendant does not suggest that it was prejudiced in its defense by the fact that Clow, rather than Farmers, brought the action.

■ An agreement of this kind will ordinarily be sustained where it is used by an insurer whose liability is contingent upon the nonliability of another party to secure the insurer's rights against such party, and at the same time afford prompt payment to the insured. *Luckenbach v. W. J. McCahan Sugar Refining Co., supra; Merrimack Mfg. Co. v. Lowell Trucking Corp., supra; Koop v. General American Transp. Corp., supra.*

A case closely in point is *Thompson Heating Corp. v. Hardware Indemnity Ins. Co. of Minn., supra.* The facts are almost identical. Two insurers were proportionately liable under separate indemnity policies for loss resulting to the plaintiff from operation of its business. A claim was filed against the plaintiff, and one company assumed the defense, while the other denied liability. The defending in-

surer advanced to the plaintiff the funds necessary to pay the settlement which was reached in the action, and exacted a loan agreement, in compliance with which the plaintiff brought suit against the defaulting insurer. In answer to a contention of the defendant, that the plaintiff was not the real party in interest, the court said:

"When the plaintiff and the defendant entered into the contract, evidenced by the indemnity policy, a chose in action was created and, to the extent that it obligated the defendant, the plaintiff as the obligee was the owner of the chose. And upon a failure of the defendant to perform its obligation, a cause of action arose in favor of the plaintiff, and the plaintiff continued to be the owner unless and until it was extinguished or transferred. For the purpose of this appeal, we must assume that a cause of action did arise in favor of the plaintiff. Was it transferred or extinguished by the agreement between the plaintiff and Liberty Mutual Insurance Company? As the terms of the agreement create the relation of lender and borrower, and in express terms negative any intention to extinguish the defendant's obligation or to transfer the right to enforce it, it would seem that this intent so clearly expressed should be given effect unless some controlling statute or rule of public policy otherwise expressed prevents it.

"It is urged that Section 11241, General Code, requiring that 'An action must be prosecuted in the name of the real party in interest,' supplies the barrier to giving effect to the intent of the parties. That provision undoubtedly is intended to prevent the prosecution of actions by persons who have no right, title, or interest in the cause and to require the actual party for relief to prosecute the action. It does not mean that no one other than the plaintiff may not have some interest in the result of the action. The test is whether the plaintiff has a real interest in the result. It owned the chose in the beginning. It never in terms parted with title to it. It was entitled to more or less from Liberty Mutual Insurance Company, dependent upon whether its claim against the defendant was enforceable. It received the larger sum from the Liberty Mutual Insurance Company as a result of its agreement to secure a judicial determination of the merits of the issue of whether the defendant was liable on its policy. . . . This action was instituted in compliance with that agreement."

The court reasoned further that, should the action be dismissed on the procedural ground that it was not brought by the real party in interest, the loan agreement would be subject to a partial rescission at the instance of Liberty Mutual Insurance Company (the lender) for a mutual mistake of law that the contract could be carried out according to its intent, and that consequently, the plaintiff had a real financial interest in the outcome of the action.

■ ■ The trial court in this case based its decision, in part at least, on the statement of the plaintiff, on cross-examination, that he had no financial interest in the result of the case. This statement was nothing more than the plaintiff's appraisal of what he conceived his legal status to be. As he said, in explanation, he expected his insurers to pay all the loss. The plaintiff simply disclaimed a right to retain the proceeds, which was proper, inasmuch as he had already assigned them to a third party, but the fact that he had no right to retain them for himself did not deprive him of his cause of action.

The authorities cited fully sustain the validity of the loan agreement as used in this instance. As we have previously noted, it is conceded by the defendant that its policy with the dealer covered the loss and that Farmers was liable for only a portion of the claim against Clow, but the extent of the liability of the respective insurers is in dispute. To resolve this issue, resort must be had to the insurance contracts.

The contract between Farmers and Clow provided indemnity for liability of Clow arising out of the ownership, maintenance, or use of the 1948 Mercury automobile, as the "described" automobile, for a newly acquired automobile replacing the described automobile (provided notice was given to Farmers within thirty days after its acquisition), or for a substitute automobile used while the described automobile was withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

In regard to this coverage, the policy contained the following provision:

"If the insured has other insurance against a loss covered by this policy the Exchange shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobile or otherwise."

As mentioned before, the policy also protected Clow against liability for accidents arising out of the use of automobiles other than the insured automobile, but this insurance was limited to the excess of Clow's liability over any other valid and collectible insurance available to him.

The bodily injury liability limits under the Farmers policy were $5,000 for each person injured and $10,000 for each accident; the property damage liability limit was $5,000. Corresponding limits under the defendant's policy were $10,000, $20,000 and $5,000. Since the suit against Clow was settled for $3,000 ($1,185 property damage and $1,815 bodily injury), it is evident that the loss was fully covered by the dealer's policy issued by the defendant. That policy also contained a provision for prorating the indemnity if other insurance was available to the insured.

The question then becomes whether both insurers were primary insurers insofar as the accident in question is concerned, or whether Farmers was liable only for the excess over the indemnity afforded by the defendant. In the latter case, since the suit was settled for less than the limits of the defendant's policy, Farmers would have no liability to Clow.

It appears, from a reading of the Farmers' policy, that Farmers assumed primary liability only if the insured's liability arose out of the ownership, maintenance, or use of the described automobile, or of a newly acquired automobile replacing it. According to the contract, the insurance would not apply to a newly acquired automobile unless notice of the replacement was given to the insurer within

thirty days after its acquisition. There is no evidence that such notice was ever given, and consequently, no proof that the coverage was ever transferred to the 1952 Ford. If it were the position of Clow, or of Farmers, that such a transfer had taken place, the burden was upon them to show that the required notice, a condition subsequent to the transfer, had been given. Since they failed to sustain this burden, the presumption is that the insured automobile was the 1948 Mercury, the automobile described in the policy. There is no provision in the policy that the coverage should automatically terminate on sale of the automobile. Furthermore, there is express provision for coverage where the liability arises out of the use, as distinguished from the ownership, of the described automobile. It has not been suggested that this provision is ambiguous, and if it were, a construction in favor of the insured, which the law dictates (*Selective Logging Co. v. General Cas. Co.*, 49 Wn. (2d) 347, 301 P. (2d) 535), would compel us to conclude that Farmers remained a primary insurer at the time of the accident.

This being the case, and it being admitted that the defendant was a coindemnitor, the provisions of each policy requiring proration apply. It follows that Farmers was, at the time of the accident, obligated to indemnify Clow for one half of the property damage liability and one third of the bodily injury liability, its proportionate share according to the limits of the two policies. The defendant, in turn, was obligated to pay one half of the property damage and two thirds of the bodily injury liability. Both, under the terms of their respective policies, were obligated to defend the action against Clow.

By the same token, Clow was entitled to recover indemnity proportionately from each of the companies and to be defended by each of them.

Insofar as Farmers advanced funds to Clow in excess of its liability, the advancement constituted a valid loan, and the agreement, to that extent, should be given the intended effect. Whether Clow sues the defendant on the

theory that he has suffered a loss to the extent that the funds advanced by Farmers were in excess of its liability and therefore repayable, or whether Farmers sues on the theory that it has paid a debt primarily owed by the defendant and is therefore entitled to contribution, or is subrogated to the right of Clow, the result is the same. The justice of the case requires that a judgment be entered accordingly.

The defendant insists, however, that the payment by Farmers in excess of its own obligation was a voluntary payment, which cannot be recovered, and cites *Fireman's Fund Indemnity Co. v. Shelby Mut. Cas. Co.*, 95 Ohio App. 88, 117 N. E. (2d) 477; *Farm Bureau Mut. Automobile Ins. Co. v. Buckeye Union Cas. Co.*, 147 Ohio 79, 67 N. E. (2d) 906, and *American Cas. Co. v. Maryland Cas. Co.*, 20 F. Supp. 561, in support of this contention. The syllogism on which those decisions rest is expressed in the syllabus in *Farm Bureau Mut. Automobile Ins. Co. v. Buckeye Union Cas. Co., supra*:

"One who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer. . . .

"Equity will not aid a volunteer.

"If the policy of each of several insurers limits its liability to such proportion of a loss as the amount insured by such insurer bears to the total applicable limit of liability of all valid and collectible insurance against such loss, the payment by one insurer of more than its proportion of a loss creates no right to contribution from the other insurers."

We think, however, that, while the major premise is correct, there is a flaw in the minor premise, and the conclusion does not follow as the night the day. The flaw lies in characterizing the payment as one made without legal liability. It must be remembered that the insurer is obligated to defend its insured, regardless of whether there is other insurance, and its liability to the insured extends to the full amount of his loss unless there is other valid and *collectible* insurance. If the coinsurer wrongfully refuses to aid in the defense and to pay its share, a suit is necessary in order to determine the respective obligations of the in-

surers. While the insurer might be entitled to withhold payment until those obligations were determined in court, such withholding would undoubtedly result in hardship to the insured, if not in an actual breach of the insurance contract.

■ . It would seem, in fact, that such action would amount to an actual breach of contract, for the obligation of coinsurers is several, not joint, and the policyholder may collect the full amount from either insurer, leaving the latter to its right of contribution from the other. *New Amsterdam Cas. Co. v. Hartford Accident & Indemnity Co.*, 18 F. Supp. 707; *Commercial Cas. Ins. Co. v. Hartford Accident & Indemnity Co.*, 190 Minn. 528, 252 N. W. 434, 253 N. W. 888; *Commercial Cas. Ins. Co. v. Knutsen Motor Trucking Co.*, 36 Ohio App. 241, 173 N. E. 241; *Commercial Standard Ins. Co. v. American Employers Ins. Co.*, 108 F. Supp. 176; *Employers Liability Assurance Corp. of London v. Pacific Employers Ins. Co.*, 102 Cal. App. (2d) 188, 227 P. (2d) 53. Only two cases holding the liability to be joint have been found. They are *Traders & General Ins. Co. v. Hicks Rubber Co. & Employers Cas. Co.*, 140 Texas 586, 169 S. W. (2d) 142; and *Vrabel v. Scholler*, 369 Pa. 235, 85 A. (2d) 858. The majority view is stated as the rule in 8 Appleman, Insurance Law & Practice, 328, § 4913.

■ If the insurer is subject to suit if it does not pay, regardless of the existence of other valid and collectible insurance, then it cannot be said that the payment is voluntary, or that the right to recover contribution is lost.

Other courts, which have seen fit to look more deeply into such transactions than did the courts in the cases cited by the defendant, have, while varying in their reasons, reached a different conclusion. Among the cases in which the right of an insurer to recover contribution has been upheld are *United States Guarantee Co. v. Liberty Mut. Ins. Co.*, 244 Wis. 317, 12 N. W. (2d) 59, 150 A. L. R. 632; *Maryland Cas. Co. v. Employers Mut. Liability Ins. Co.*, 112 F. Supp. 272, and *Massachusetts Bonding & Ins. Co. v. Car & General Ins. Corp.*, 152 F. Supp. 477. In dealing with the

contention made by the defendant in this case, the court in the latter case said:

"When the plaintiff [coinsurer] paid the whole of Johnson's loss the defendant denied to plaintiff that it shared the now-admitted common burden of Johnson's liability. This denial was a false representation to plaintiff that, within the meaning of the 'Other Insurance' provisions in both policies, Johnson had no 'valid and collectible insurance' with defendant for loss resulting from this casualty. Plaintiff thus was compelled to act on the assumption, as defendant well knew, that the burden was the plaintiff's alone. In so acting the plaintiff decided, wisely, to join with Reading Company in a reasonable settlement before any suit, and to have judicially determined thereafter the truth or falsity of defendant's representation of non-coverage. Faced with this suit for such determination defendant staunchly adhered to falsity until trial and then, forced into reluctant admission of the truth, sought to turn to its own advantage its former falsity by asserting that the very payment which its own misrepresentations obliged constituted the plaintiff a volunteer. Whether the legal principles in the Murphy case [*Murphy & Co. v. Manufacturers' Casualty Co.*, 1926, 89 Pa. Super. 281], supra, or equitable principles of estoppel are applied, the defendant cannot now be heard to complain of the consequence of its own conduct."

In *United States Guarantee Co. v. Liberty Mut. Ins. Co.*, *supra*, the court answered the contention with reasoning similar to ours:

"Defendant was requested to defend the Gaurkee action and refused to do so. The assured was fortunate enough to have other insurance and thus it was not required to assume the defense itself. The plaintiff by and under its contract with assured agreed 'to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages.' In paying the damages to Gaurkee it performed the terms of its contract with the assured, as the defendant had breached and violated its contract for a like liability. By the terms of its policy plaintiff was subrogated to the rights of the assured which, under the decisions, is a substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obliga-

tion by one who in good conscience ought to pay it. [Citing cases.] If assured had made settlement with Gaurkee, and was the plaintiff in this action, defendant would be liable for the amount now claimed. By payment of the entire amount, plaintiff is substituted in place of the assured with reference to a lawful claim or right. When defendant violated the contract by refusing to defend the Gaurkee action, a settlement by plaintiff and payment of the full damages did not make plaintiff a volunteer or interloper as to the payment for which this defendant is liable. By its contract defendant assumed and agreed to pay the amount which plaintiff claims as contribution, and by its conduct defendant waived any defense which it now claims."

We conclude that the loan agreement is entitled to be given its intended effect, to the extent of the defendant's pro rata share of the liability. Payment to Clow, of course, will extinguish Farmers' right to contribution and relegate it to its contractual claim against Clow.

The judgment is reversed and the cause remanded with directions to enter a judgment consistent with the views expressed herein.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.

---

October 5, 1959. Petition for rehearing denied.