[No. 37869.    Department Two.    July 7, 1966.]

WESTERN PACIFIC INSURANCE COMPANY, *Respondent*, v. FARMERS INSURANCE EXCHANGE, *Appellant.**

*Reported in 416 P.2d 468.

*Martin, Shorts & Bever,* by *Lloyd W. Bever,* for appellant.

*Ferguson & Burdell,* by *W. Wesselhoeft,* for respondent.

HAMILTON, J.—This is a contest between two insurance companies to determine liability for claims arising out of an automobile accident. The plaintiff-respondent, Western Pacific Insurance Company, hereafter referred to as Western, settled and paid the claims and initiated this action seeking indemnification from defendant-appellant, Farmers Insurance Exchange, hereafter referred to as Farmers, which had refused a tender of the defense of the claims. It is stipulated that the amounts paid and the attorney fees incurred by Western were reasonable. The dispute revolves about whether Farmers is primarily liable under the terms of a liability policy issued to the owner of the subject vehicle.

The trial court found and concluded liability on the part of Farmers and entered judgment indemnifying Western for the amounts paid and the attorney fees incurred in settlement of the claims. From this determination Farmers appeals.

The background facts may be summarized as follows: In the early spring of 1960, one R. A. Hendrickson, a paint contractor, became interested in purchasing a second-hand pickup truck. He consulted his long time friend and neighbor, J. A. Formanek, an automobile repairman, who had performed some work upon a truck that was for sale. Formanek recommended the truck, although he informed

Hendrickson that it was in need of manifold, muffler, and tail pipe repairs. Hendrickson, armed with this information, negotiated for and purchased the truck. Thereafter, it was agreed between the two friends that Formanek would make the necessary repairs. Charges for the repairs were not discussed; however, it was understood by both that the work would be done as cheaply as possible, with second-hand parts and at the convenience of Formanek.

Farmers provided Hendrickson with standard public liability and property damage coverage on the truck, the policy containing a pro-rata clause.[1] Formanek carried his personal and business liability and property damage coverage with Western, the policy containing an excess coverage clause.[2]

On March 29, 1960, Formanek, as an accommodation to his friend and contrary to his usual business practice, personally picked up the truck at the Hendrickson home and drove it to his repair shop. This was with Hendrickson's knowledge and consent, it being understood by both men that Formanek's possession of the truck was for the purpose of locating second-hand parts and effecting the repairs. The truck remained at the repair shop until Friday, April 1, 1960,

---

[1] "(17) OTHER INSURANCE—

"Coverages A, B, E, F, G and H

"Under Coverages A, B, E and F, the Exchange shall not be liable for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all collectible insurance against such loss." Exhibit No. 4.

[2] "10. Other Insurance. If at the time of an occurrence there is any other insurance available to the insured (in this or any other carrier) there shall be no insurance afforded hereunder as respects such occurrence except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. It is further provided that with respect to loss arising out of the operation, maintenance or use of any non-owned automobile the applicable insurance afforded by this policy shall be excess over and above such other available insurance. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured." Exhibit No. 2.

when, after closing hours, Formanek first found the time to turn his attention to the work. Closing the shop, Formanek then took the truck to a wrecking yard to find and fit the necessary parts. After acquiring the parts and loading them into the truck, Formanek proceeded toward his home.[3] On the way, he deviated approximately 7 blocks from the most direct route for the purpose of purchasing some fish and chips for his family dinner. While on this detour and before obtaining the fish and chips, the brakes on the truck failed and he collided with another car, causing the injuries giving rise to the claims settled and paid by Western.

On appeal Farmers assigns error to the findings and conclusions of the trial court revolving about the issues of (a) whether Formanek had implied permission to utilize the truck in the manner he was using it at the time of the accident; (b) whether the truck was then being used in "the automobile business" as defined in an exclusionary clause of Farmers' policy; and (c) whether, in any event, Western was entitled to reimbursement of attorney fees expended in settling the claims.

We cannot agree with Farmers' contention that the trial court erred in finding and concluding that Formanek had implied permission to use the truck at the time and place of the accident.

We have, in *Wallin v. Knudtson,* 46 Wn.2d 80, 278 P.2d 344 (1955), announced our acceptance of the immaterial or permissible deviation rule which permits a deviation beyond the letter, but within the spirit, of the express or implied permission to the use of an automobile given by the insured owner.

---

[3] The trial court made no finding as to the reason Formanek was taking the truck home, and the evidence concerning this facet of the case is in dispute. Formanek testified he was taking it home for safekeeping over the week end, there being some danger of pilferage in the repair shop area. Hendrickson and his wife testified that Formanek told them he was going to return to the shop after dinner and complete the repair work. Formanek stated he could not remember telling the Hendricksons this.

The application of this rule is outlined in 12 Couch, Insurance § 45:474 (2d 1964), as follows:

> Under this doctrine, if the use made by an employee or other bailee is not such a gross, substantial, or major violation, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause. Conversely, there is no omnibus coverage where there is a major or substantial departure or deviation or a gross violation of the original permission, purpose, or instructions relating to the use of the automobile. Thus, the fact that there is a deviation from the performance of the employee's duty for his own personal gain or benefit does not necessarily vitiate the permission to operate the auto, and avoid the coverage, nor does the fact that the permittee makes a more extended use of the vehicle than originally contemplated impair the efficacy of the consent where such use falls within the general scope of the use to which the consent was given.
>
> In applying this rule, the courts must determine in each instance—taking into account the extent of deviation in actual distance or time, the purpose for which the vehicle was given, and other factors—whether the deviation was "minor" or "material." Since the distinction between a minor and a major deviation is a matter of degree, no hard-and-fast rules can be laid down as to what constitutes a "minor" deviation.

■ And, as we pointed out in the *Wallin* case, *supra,* application of the rule renders it necessary to weigh the circumstances and conditions under which the insured owner gave permission for the use of his car, including the elements of purpose, place, distance, and time, and undertake therefrom to virtually read the mind of the insured to the extent, at least, of determining whether he would have prohibited the deviation had he been asked concerning it.

In the instant case, Hendrickson and Formanek were close friends. They lived in near proximity to one another and visited together frequently. They conferred relative to the condition of the pickup truck, the advisability of its purchase, and the prospect of its repair. It is undisputed that Formanek came into possession of the truck for repair purposes with the consent and permission of Hendrickson. The arrangements relative to the repair work were very in-

formal. It was understood that the work would be performed at the convenience of Formanek without specific time limit, and at minimal cost. Formanek drove the truck from Hendrickson's home to the repair shop with Hendrickson's knowledge and consent, and it was contemplated that Formanek would have to take the truck from his repair shop to find and fit second-hand parts. It would be fairly inferrable that Formanek would initiate the work after closing hours, which he did, and it would be reasonably foreseeable that he might drive the truck home from the wrecking yard after he found the necessary parts. Likewise, it would be reasonable to anticipate that he might detour a short distance from the most direct route home to pick up food or groceries for his evening meal.

Under these circumstances, we agree with the trial court that it can be readily inferred that Hendrickson would not have prohibited the deviation had he been asked concerning it.

The trial court correctly found and concluded that the deviation was a minor one within the contemplation of the immaterial or permissible deviation rule.

The cases of *Yurick v. McElroy,* 32 Wn.2d 511, 202 P.2d 464 (1949) and *McKee v. Garrison,* 37 Wn.2d 37, 221 P.2d 514 (1950), relied upon by Farmers, are distinguishable. In the *Yurick* case, *supra,* the deviation was a gross or material one. In the *McKee* case, *supra,* original permission to possess and drive the automobile involved was lacking.

By its second contention, Farmers asserts the trial court erred in failing to find and conclude that, at the time of the accident, the truck was being used in the automobile business. In this respect, the pertinent policy contained the following exclusionary clause and accompanying definition:

Additional Definitions Under Part I:

. . . .

(4) Automobile Business. "Automobile business" means the business of selling, repairing, servicing, storing or parking automobiles, their parts or equipment.

. . . .

THIS POLICY DOES NOT APPLY UNDER PART I:

. . . .

6. while the described automobile is being used in the automobile business, but this exclusion does not apply to the named insured or his relatives; . . . . Exhibit No. 4.

■ We have construed identical exclusionary clauses in the cases of *McCree v. Jenning*, 55 Wn.2d 725, 349 P.2d 1071 (1960) and *Northwestern Mut. Ins. Co. v. Great Am. Ins. Co.*, 66 Wn.2d 762, 404 P.2d 995 (1965). In both cases we have pointed out that the word "used" in the pertinent clause relates to a use of the automobile by the repair or service man for *his* business purposes, as distinguished from his use of it in the course of repairing or servicing it. We are not prepared at this time to erase this distinction.

Accordingly, we conclude, as did the trial court, that Formanek's use of the truck at the time of the accident does not fall within the exclusionary clause.

Farmers' final challenge relates to the action of the trial court in awarding indemnification for attorney fees and costs expended by Western in settling the third-party claims for relief arising from the accident. This contention, so far as the issues raised on this appeal are concerned, brings into consideration the relative potential coverages and obligations of Western and Farmers growing out of the accident.

■ It will be recalled that Western insured Formanek, the nonowner driver of the truck, with a policy containing an "excessive insurance" clause, and that Farmers insured Hendrickson, the owner of the truck, with a policy containing a "pro-rata" clause. As between Western and Farmers, then, by virtue of the respective clauses, Farmers' policy, so far as covering a permissive and included use of the truck, would be considered the primary policy and Western's the secondary policy for subrogation, contribution, or apportionment purposes. 7 Am. Jur. 2d *Automobile Insurance* § 202 (1963); 8 Appleman, Insurance Law & Practice § 4914 (1942); 31 A.L.R.2d 1324; 76 A.L.R.2d 505.

Formanek, Western's insured, however, was the driver of the truck at the time of the accident, and it was against him that the claims were lodged and suit thereon commenced. No claims were lodged or pursued against Hendrickson, Farmers' insured. The claims against Formanek were in

substantial sums, one being in the amount of $63,700. The claims were settled, after suit and during trial, for an amount less than the limits of the policy issued by Farmers. Western was thereby relieved of collectible coverage if Formanek's use of the truck was a permissive and included use within the terms of Farmers' policy.

Under the terms of its policy, Western had a direct contractual duty to defend its insured, Formanek, regardless of the existence of other insurance. See, generally, *Clow v. National Indem. Co.*, 54 Wn.2d 198, 339 P.2d 82 (1959). Western also had an interest in protecting itself against potential "excess" liability. Western accepted its obligations and acted accordingly.

On the other hand, Farmers, in carrying the policy on the truck, with potential coverage extended to nonowner drivers under the omnibus clause, had a clearly recognizable contractual concern with the defense of Formanek. Indisputably, Farmers had a direct contractual obligation to represent and defend the interests of Hendrickson, its insured, should he be drawn into or become involved with claims arising out of the accident. And these obligations were outstanding regardless of the existence of other insurance. Farmers could not, therefore, stand aloof from the pending lawsuit upon the basis of a unilateral determination that the provisions and exclusions of its policy might relieve it of any liability, and thus escape responsibility for the expenses of the defense of Formanek when liability ultimately came home to roost. When liability was in fact established, upon and within the limits of its policy, Farmers became the primary insurer and Western the secondary insurer. As the primary insurer, Farmers became liable for the costs of the defense. *Fireman's Fund Indem. Co. v. Freeport Ins. Co.*, 30 Ill. App. 2d 69, 173 N.E.2d 543 (1961); *Maryland Cas. Co. v. Marquette Cas. Co.*, 143 So.2d 249 (La. App. 1962).

The trial court did not err in indemnifying Western.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.