[No. 67544-9.   En Banc.]
Argued May 27, 1999.      Decided July 22, 1999.

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN
EDWIN C. McRORY, ET AL., *Plaintiffs*, v. NORTHERN
INSURANCE COMPANY OF NEW YORK, *Defendant*.

*Mills Meyers Swartling*, by *Frederick M. Meyers* and *Stephania C. Denton*, for plaintiffs.

*Karr Tuttle Campbell*, by *Robert Radcliffe* and *Jacquelyn A. Beatty*, for defendant.

TALMADGE, J. — In response to a federal court certified question, we are asked to determine if an insurer must pay attorney fees to an insured pursuant to *Olympic Steamship Co., Inc. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), if that insurer fails to provide coverage to the insured, the insured successfully sues to secure coverage, but another insurer pays a substantial portion of the costs of the lawsuit. We respond in the affirmative.

## ISSUE

The certified question as submitted by the District Court is as follows:

When the Court, in a declaratory judgment action, has determined that a primary insurer should have defended and indemnified an underlying lawsuit in which the insured was defended by the excess insurer, and the excess insurer has paid for attorney fees in the declaratory judgment ac-

tion, is the insured entitled under *Olympic Steamship* to recover attorney fees that will be reimbursed to the excess insurer?[1]

## FACTS[2]

Edwin McRory is an insurance broker and agent, who owns and operates McRory & Company Insurance Agency (the broker, his wife, and the agency are collectively McRory unless otherwise designated). McRory solicits business clients in order to place insurance coverage and gives clients advice about their insurance exposure. J.D. Glass & Door (J.D.) was McRory's client. McRory obtained a policy for J.D. with Continental Insurance (Continental). In 1994, J.D. sustained a serious fire loss and filed a claim with Continental. Continental hired Campos & Stratis, a "forensic accounting firm," to adjust the claim. J.D. hired Adjusters International, a public adjuster, to represent its interests. Mr. McRory involved himself in the claim process to help J.D. settle its claim against Continental. During his involvement, Mr. McRory became frustrated with Campos & Stratis' handling of the J.D. claim. He subsequently expressed his opinion to Continental that Campos & Stratis "screwed" one of McRory's insureds and almost put him into bankruptcy. As a result of these statements, Campos & Stratis sued McRory for defamation and other wrongful conduct.

McRory carried two insurance policies relevant to the Campos & Stratis lawsuit. McRory was insured by the defendant, Northern Insurance Company (Northern), under a commercial general liability policy and Employers Insurance of Wausau (Wausau) under a professional liability policy. After Campos & Stratis communicated with McRory and Adjusters International about the allegedly defamatory

---

[1]We note McRory paid significant attorney fees that were not reimbursed by his professional liability insurer. Our response to this question should not be read to necessarily limit recovery under the *Olympic Steamship* principle to reimbursed fees only.

[2]The facts set forth here are largely stated by the District Court in its Order Certifying Question of State Law to the Supreme Court of Washington.

remarks, but before it filed suit, McRory put Northern and Wausau[3] on notice about the communications. Wausau initially declined to get involved based on an intentional acts exclusion in its policy. After McRory's counsel informed Wausau a plaintiff can recover for negligent defamation in Washington, Wausau accepted the defense of the Campos & Stratis lawsuit under a reservation of rights based on its intentional acts exclusion.

After Campos & Stratis filed its complaint in November 1995, McRory sent the complaint to Northern and Wausau. Northern declined coverage under an exclusion entitled "Insurance and Related Operations." Wausau defended the lawsuit. Campos & Stratis and McRory settled in April 1997. Apart from McRory's $10,000 deductible, Wausau fully funded the settlement, paying McRory's significant defense fees and costs and the substantial settlement obligation of McRory to Campos & Stratis.

McRory subsequently sued Northern in state court contending Northern had breached its contract by failing to defend and indemnify McRory in the Campos & Stratis lawsuit. Through April 1997, when the Campos & Stratis lawsuit settled, McRory incurred $13,731.77 in attorney fees in the effort to get Northern to defend and indemnify the Campos & Stratis lawsuit. Otherwise, Wausau fully funded McRory's lawsuit against Northern.

Northern removed this case to federal court and the parties eventually filed cross-motions for summary judgment. In a September 17, 1998 order, the United States District Court for the Western District of Washington, the Honorable Barbara Jacobs Rothstein, ruled Northern's policy provided coverage to McRory in the Campos & Stratis lawsuit. The District Court's ruling entitled McRory to judgment against Northern for the costs of defending and settling the Campos & Stratis lawsuit.

McRory filed a subsequent motion with the District Court seeking an award of attorney fees and costs incurred in the

---

[3]Wausau utilized the services of a general managing agent, E&O Professionals, with respect to the handling of the claim.

Northern lawsuit under *Olympic Steamship*. These fees and costs were paid by McRory's other insurer, Wausau,[4] and will apparently be reimbursed to Wausau if recovered. Northern opposed the motion on the ground *Olympic Steamship* does not apply to a case in which an insured's action to obtain the benefits of his insurance policy is fully funded by another insurer. Neither the District Court nor the parties could find any Washington case law addressing the precise issue before the court. The United States District Court then certified the attorney fee question to us. Chapter 2.60 RCW; RAP 16.16.

## ANALYSIS

◼ We have established an equitable exception to the American Rule on attorney fees[5] to allow the award of fees to an insured who successfully sues an insurer to obtain insurance coverage. *Olympic S.S.*; *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 32-33, 904 P.2d 731 (1995). We articulated the rationale for the rule in *Olympic Steamship* as follows:

> We also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured. Other courts

---

[4]Northern is not a true excess insurer for McRory in the sense McRory paid an additional premium for an extra layer of insurance coverage. Rather, McRory paid a premium for comprehensive general liability coverage to Northern and a separate premium to Wausau for professional liability coverage. Based on the language of the "Other Insurance" provisions in the Northern general liability and Wausau professional liability policies, the District Court found Northern's coverage was primary and Wausau's was excess. *See generally* THOMAS V. HARRIS, WASHINGTON INSURANCE LAW §§ 31.3, 51.1-51.4 (1995) (hereinafter "HARRIS"). We will refer to the insurers as primary and excess insurers accordingly, although such status is not determinative of the issue before us.

[5]Under the American Rule, a court has no power to award fees as a cost of litigation in the absence of contract, statute, or recognized ground of equity, providing for fee recovery. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994); *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941). *See also* PHILIP A. TALMADGE, ATTORNEY FEES IN WASHINGTON: ANNOTATED STATUTES, CASES AND COMMENTARY ix-x (Charles P. Siner ed., Butterworth Legal Publishers rev. ed. 1995) (noting the basis of the American Rule and discussing other equitable exceptions to that rule at 273-85).

have recognized that disparity of bargaining power between an insurance company and its policyholder makes the insurance contract substantially different from other commercial contracts. When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured. Further, allowing an award of attorney fees will encourage the prompt payment of claims.

. . . [W]e believe that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

117 Wn.2d at 52-53 (citations and footnote omitted). Further, in *McGreevy*, we noted the exception also arose from the insurer's enhanced fiduciary duty not to put its financial interest above those of the insured. *McGreevy*, 128 Wn.2d at 36-37.

This exception is not without limitation. We have declined to award fees under this exception where the case did not concern a coverage issue, but rather a dispute over the value of the claim after the insurer had accepted coverage. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994). *See also Mahler v. Szucs*, 135 Wn.2d 398, 432, 957 P.2d 632, 966 P.2d 305 (1998) (attorney fees under *Olympic Steamship* not available where gravamen of dispute is value of subrogation interest rather than coverage issue); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143-49, 930 P.2d 288 (1997) (discussing at length the parameters of "coverage disputes" for which attorney fees are available under *Olympic Steamship*).

In the present case, leaving aside the issue of third party reimbursement for the moment, it is clear McRory was

entitled to recover attorney fees from Northern under the *Olympic Steamship* rule. This was a coverage action in which McRory prevailed; McRory's action in federal court was designed to force Northern to defend and cover the claim brought by Campos & Stratis against McRory. It was not a clash over the value of the claim.

Despite McRory's entitlement to fees from Northern under *Olympic Steamship*, Northern argues the *Olympic Steamship* rule should not apply for two reasons. The first reason appears to be the rule allows fees to be recovered only if the insured "personally" is out of pocket for the attorney fees. The second, which is a variation of the first argument, is the insured has not been "harmed" if another party has actually paid the insured's fees. In effect, Northern argues McRory has not been damaged because Wausau paid McRory's litigation expenses in this action.

As to the first contention, we have not confined the recovery of fees under the *Olympic Steamship* rule to the insured personally. In fact, in *Estate of Jordan v. Hartford Accident & Indemnity Co.*, 120 Wn.2d 490, 507-08, 844 P.2d 403 (1993), we held assignees of the insured may recover fees if they are compelled to sue an insurer to secure coverage. Plainly, if McRory had assigned its rights under *Olympic Steamship* to Wausau, Wausau would have been entitled to recover fees.

Northern asserts this case is actually a subrogation action[6] and Wausau, rather than McRory, is the real party in interest. Thus, according to Northern, McRory may not recover attorney fees, because Wausau is the real party in interest. We have rejected this contention. If an insurer loans money to an insured and the insured recovers against a third party, the loan agreement is enforceable and the insured may proceed against the third party. The insured, not the insurer, is the real party in interest. *Clow v. National Indem. Co.*, 54 Wn.2d 198, 201-04, 339 P.2d 82

---

[6]In subrogation actions, the insured remains the real party in interest. *See Mahler*, 135 Wn.2d at 413-15 (describing an insurer's role in a subrogation action as pursuing "legal action in the name of the insured against the tortfeasor," *id.* at 415, or stepping into the shoes of the insured. *Id.* at n.8.); HARRIS at § 52.1.

(1959). As we explained in *Weber v. Biddle*, 72 Wn.2d 22, 28, 431 P.2d 705 (1967):

> Appellants also claim the insurance company is the true party in interest, apparently because of the supplemental agreement under which respondent agreed to withhold for the insurer monies obtained in a later action. The validity of such loan and trust agreements was determined by this court in *Clow v. National Indem. Co.*, 54 Wn.2d 198, 339 P.2d 82 (1959). There we held, in accord with the majority of other jurisdictions, that nothing in the execution of such an agreement alters the fact that the insured is the real party in interest. Appellants made no offer to show that the agreement between respondent and Safeco, or General Insurance Company of America, was not truly a loan to be repaid in event respondent should succeed in obtaining money as a result of legal action for the accident in question.
>
> The insurer has made no attempt to become a party to this action. There was no error in refusing to join General Insurance Company. For the same reason, there was no error in refusing to instruct the jury that this case was a subrogation action by which General Insurance Company had already paid respondent $10,000 for her injury.

Thus, in this case, if Wausau had loaned money to McRory with the understanding McRory would reimburse Wausau from any recovery against Northern, McRory would remain the real party in interest entitled to recover attorney fees under the *Olympic Steamship* rule if successful in the coverage action.

Washington law permits an insured to sue an insurer for the entirety of the loss regardless of whether the insured has received partial reimbursement from another insurer. *Clow*, 54 Wn.2d at 208 (the obligation of co-insurers is several, not joint, and the policyholder may collect the full amount from either insurer); *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 18, 416 P.2d 468 (1966) (insurer has a direct contractual obligation to its insured regardless of the existence of other insurance). *See also Fraser v. Beutel*, 56 Wn. App. 725, 735-37, 785 P.2d 470 (noting Washing-

ton courts have rejected the argument an insurer who has paid its insured and been subrogated to the insured's rights against the wrongdoer is the real party in interest and the only one entitled to prosecute a subsequent action against the wrongdoer; and holding the insured was the real party in interest in such action), *review denied,* 114 Wn.2d 1025, 794 P.2d 508 (1990). As the insured, McRory may certainly seek to enforce the benefit of his bargain with his primary insurer, Northern. Moreover, the fact that an insurer pays an insured or an insured agrees to reimburse its insurer for payments made by the insurer in the event the insured successfully sues a liable third party, does not affect the insured's status as the real party in interest in such suit nor the insured's ability to recover all damages and costs. Northern's argument McRory has failed to personally be affected by the coverage dispute so as to be disqualified from recovering attorney fees under *Olympic Steamship* is without merit.

With regard to the second contention, Northern argues McRory has not actually experienced a loss because another insurer, legally obligated to cover the claim against McRory, paid the defense and settlement costs in the underlying claim and is now funding the coverage action:

> The insured itself must incur attorney fees, bear "the cost of compelling the insurer to honor its commitment," or assume the burden of legal action to obtain the full benefit of its policy if it is to be entitled to an award of attorney fees. In this respect, "burden" must mean financial burden, because the award of attorney fees clearly is contemplated to reimburse the insured for its actual reasonable and necessary costs. Bearing only the "responsibility" of litigation such as being the person or organization named in the complaint, without bearing the expense, cannot entitle an insured to an award of attorney fees.

Br. of Def. at 15. Northern's "no damages" argument, asserting an insured who has not personally suffered the expense of pursuing the declaratory judgment action has nothing to complain of, is flawed. In the first place, McRory

incurred substantial expense attempting to persuade Northern to fulfill its contractual duty. Also, the fact Wausau stepped in and defended McRory when McRory was sued by Campos & Stratis does not somehow exonerate Northern from its failure to defend and indemnify McRory as the primary insurer. Indeed, McRory received the benefit of its bargain with Wausau, but not from Northern. We rejected a similar "no damages" argument in an analogous setting long ago:

> There is a fatal fallacy in the reasoning which concludes that the insured is made whole upon payment of the loss to him by the insurer, in that the premiums are not refunded to the insured so paid by him to the insurer for the policy of insurance and these premiums, if paid over some length of time, would aggregate a considerable sum of money. Nor does it seem that a wrongdoer should not respond for his wrongful acts in damages to the insured and thereby profit by reason of the sagacity of the insured in keeping his property protected by insurance.

*Alaska Pac. S.S. Co. v. Sperry Flour Co.*, 94 Wash. 227, 230, 162 P. 26 (1917). Just as a tortfeasor should not profit from his wrongful act by virtue of the fortuity that the injured insured had the sagacity and foresight to be covered by insurance, *see Fraser*, 56 Wn. App. at 736 (citing *Alaska Pac.*), an insurer who improperly refuses coverage should not profit by the insured's foresight to have other insurance protection.

We note Northern's two contentions advanced to deny McRory *Olympic Steamship* attorney fees are essentially the same arguments made by primary insurer in *Millers Casualty Insurance Co. v. Briggs*, 100 Wn.2d 9, 665 P.2d 887 (1983), a subrogation action, to deny recovery to an excess insurer that provided coverage to the insured. We rejected the primary insurer's contentions in *Millers Casualty Insurance*, and held the excess insurer was entitled to recover from the primary insurer. Moreover, we held the primary insurer's contentions to be so lacking in merit as to justify an award of sanctions against the primary insurer under RAP 18.9(a) for filing a frivolous appeal.

In the final analysis, we look again to the public policy reasons for our holding in *Olympic Steamship* Northern's position undermines that public policy. More than just money is at stake in a coverage case. In *Olympic Steamship*, we recognized the cost of compelling an insurer to honor its commitment includes not only the out-of-pocket expense of pursuing such action, but also the time and "vexatiousness" such litigation necessarily entails. *Olympic S.S.*, 117 Wn.2d at 52-53; *accord McGreevy*, 128 Wn.2d at 35. Moreover, the *Olympic Steamship* rule is designed to "encourage the prompt payment of claims." *Olympic S.S.*, 117 Wn.2d at 53; *McGreevy*, 128 Wn.2d at 37 n.9. Were Northern's position to prevail, it would encourage foot dragging by insurers. The problem would be compounded in cases of multiple insurers. Each insurer with a duty to defend and indemnify would be encouraged to wait and see if some other insurer would step in. We decline to condone such conduct. *Millers Cas. Ins.*, 100 Wn.2d at 14.

We explained the equities governing an insured's coverage action against an insurer at length in *McGreevy*:

[I]n the context of controversies involving insurance coverage, the enhanced fiduciary obligation springing from an insurer-insured relationship requires that "an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." Thus, when an insurer unsuccessfully engages an insured in litigation to deny coverage, it can be said that the insurer not only delays the benefit of the bargain of the insurance contract to the insured, but also that the insurer acts in contravention to its enhanced fiduciary obligations. Providing a remedy for this inequitable situation is at the bottom of the rule announced in *Olympic Steamship*.

*McGreevy*, 128 Wn.2d at 36-37 (footnote and citation omitted). The purpose of *Olympic Steamship* is better served by placing the financial burden of the coverage action on the party whose conduct prompted such action—the insurer

who refused the insured coverage in the first place.[7] *See Gossett v. Farmers Ins. Co.*, 133 Wn.2d 954, 980, 948 P.2d 1264 (1997) (the potential for an attorney fees award under *Olympic Steamship* encourages insurers to satisfy fiduciary obligations, including prompt payment of claims).

## CONCLUSION

McRory is entitled to recover reasonable attorney fees under *Olympic Steamship* in the coverage action against Northern. Any reimbursement arrangement between McRory and third persons for attorney fees and other costs of litigation advanced to McRory is outside the purview of a decision to award attorney fees under *Olympic Steamship* We, therefore, answer the certified question in the affirmative.

GUY, C.J., SMITH, JOHNSON, MADSEN, SANDERS, and IRELAND, JJ., and HOUGHTON and SWEENEY, JJ. Pro Tem., concur.

---

[7]Northern warns we should be wary of a windfall to the insured. Br. of Def. at 15. But there is no windfall here. McRory's *Olympic Steamship* recovery is confined to reasonable attorney fees incurred in pursuing this coverage action. McRory will reimburse those costs covered by Wausau. A single recovery is the result. It is noteworthy these fees would not have been incurred had Northern, as primary insurer, performed as it should have under its own contract. The equities of this case weigh clearly against Northern's position.