[No. 31123-9-I.   Division One.   April 5, 1993.]

NEW HAMPSHIRE INSURANCE COMPANY, *Respondent,* v. SAMUEL MYERS, ET AL, *Defendants,* CORA CHURCHILL, ET AL, *Appellants.*

*Bradley Maxa* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellants.

*William J. Price, Mark R. Johnsen,* and *Karr Tuttle Campbell,* for respondent.

PEKELIS, J. — Cora Churchill and the estate of Jason Churchill (Churchill) appeal from the judgment on a verdict denying coverage under an automobile liability policy issued by New Hampshire Insurance Company. Churchill contends the trial court erred in denying her motion for a directed verdict, arguing that coverage exists as a matter of law. We affirm.

I

On May 25, 1990, Kristopher Myers was involved in a 1-truck accident in which a passenger, Jason Churchill, was killed. A few days before the accident Myers had contacted Eugene Loop, who was the father of Jonathan Loop, a principal of the company which owned the truck. Eugene had agreed to sell the truck on his son's behalf.

Apparently,[1] Myers informed Loop that he wished to buy the truck but needed to park it overnight at his mother's house so that his grandfather could examine the clutch. Myers also said that he had a driver's license, auto insurance, and the means to purchase the truck. Based on these assertions, none of which were true, Loop gave Myers permission to take the truck.

Myers drove away and proceeded on an extended joyride. He let at least three unlicensed friends drive the truck. At the time of the accident, Myers and Churchill were on their way to an overnight beach party on Vashon Island.

---

[1] Pursuant to RAP 9.3, the parties have submitted only a narrative report of proceedings.

The estate of Jason Churchill sued Myers for Jason's wrongful death and sought liability coverage under the policy issued to Jonathan Loop, Inc. Section II(A) of the policy provided as follows: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." The policy defines an "insured" as: "Anyone else while using with your permission a covered 'auto' you own".

On September 27, 1990, New Hampshire brought a declaratory judgment action denying coverage under the New Hampshire policy, claiming Myers obtained permission to use the truck through fraud and had exceeded the scope of the owner's permission.

At the close of New Hampshire's case in chief, Churchill moved for a directed verdict on the grounds that Eugene Loop's initial decision to allow Myers to use the truck was sufficient by itself to grant coverage. The trial court denied the motion and sent the issues of false representation and scope of permission to the jury.

The jury unanimously returned a special verdict that Myers (1) obtained the truck by fraudulent means, and (2) was not using the truck within the scope of the permission given by Eugene Loop. The trial court entered a judgment declaring that Myers was not covered under the New Hampshire policy.

## II

On appeal, Churchill does not challenge the jury's determination that Myers had obtained permission from Loop through false representations and subsequently exceeded the scope of that permission. Rather, Churchill contends that the fact of initial permission, regardless of how it is obtained, is sufficient to establish coverage under the New Hampshire policy.

New Hampshire disagrees, claiming that (1) settled Washington law requires that the permittee's use of the vehicle be within the scope of permission, and (2) Loop's permission to use the truck was procured through fraud and thus is void.

In general, three possible rules exist for interpreting permissive use clauses in the omnibus provision of an insurance policy. They are: (1) the strict or conversion rule, (2) the initial permission rule, and (3) the minor deviation rule. *Eshelman v. Grange Ins. Ass'n*, 74 Wn.2d 65, 67-68, 442 P.2d 964 (1968). Under the strict or conversion rule, any deviation from the scope of permission, no matter how slight, will defeat liability coverage under the omnibus clause. Under the initial permission rule, once permission is given, it extends to any use of the vehicle, even those uses not originally contemplated by the insured. Under the minor deviation rule, a material deviation voids the initial permission and precludes coverage under the omnibus clause. A minor deviation leaves the permission unaffected, so that the omnibus clause is operative. *Eshelman*, 74 Wn.2d at 67-68; *see also* 12 G. Couch, *Insurance* §§ 45:464-45:479 (2d ed. 1981).

In a long series of cases, our Supreme Court has consistently endorsed the minor deviation rule. *Eshelman*; *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 416 P.2d 468 (1966); *Foote v. Grant*, 56 Wn.2d 630, 354 P.2d 893 (1960); *Wallin v. Knudtson*, 46 Wn.2d 80, 278 P.2d 344 (1955); *Yurick v. McElroy*, 32 Wn.2d 511, 202 P.2d 464 (1949). Similarly, we have followed this rule several times in recent years. *Progressive Northwest Ins. Co. v. Haker*, 55 Wn. App. 828, 780 P.2d 919 (1989); *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 739 P.2d 731 (1987).

According to Churchill, however, the time has come to reexamine Washington's adherence to the minor deviation rule. Relying primarily on what Churchill views as the public policy reflected in the omnibus statute, RCW 46.29.490,[2] he urges this court to adopt the initial permission rule.

---

[2] RCW 46.29.490(2)(b) provides in part:

"(2) Owner's policy. Such owner's policy of liability insurance:

". . . .

"(b) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle or vehicles . . .".

We find it unnecessary to address this contention given the circumstances present here. The jury specifically found that Myers obtained the truck by fraud.[3] As a general rule, permission obtained through fraud is void and thus precludes coverage under the omnibus provision of an automobile insurance contract: "Fraud on the part of the operator of the vehicle may negate the existence of consent or permission of the insured, for when the permission to use the automobile is procured by fraud, there is no consent and the omnibus clause is not operative." (Footnotes omitted.) 12 G. Couch, *supra* § 45:349, at 691; *see also* 6C J. & J. Appleman, *Insurance* § 4365 (1979).

Although there is no Washington case directly on point, courts in several other states have determined that fraud invalidates an insured's consent for purposes of an omnibus clause in an automobile insurance policy. For example in *Federal Kemper Ins. Co. v. Neary*, 366 Pa. Super. 135, 530 A.2d 929 (1987), an insured permitted a minor to drive the insured's car based on the minor's representation that he was 16 years of age and had a valid learner's permit to drive. The minor subsequently collided with another vehicle, killing the insured. *Neary*, 366 Pa. Super. at 137-38. On appeal, the Pennsylvania court held that even if the minor had implied permission to use the vehicle, that permission was vitiated by the fraudulent manner in which it was procured. *Neary*, 366 Pa. Super. at 143; *see also Lusk v. Travelers Ins. Co.*, 250 So. 2d 197 (La. Ct. App. 1971) (no coverage where student obtained permission to use teacher's automobile by misrepresenting fact that she possessed a driver's license); *Hodge v. Lumbermens Mut. Cas. Co.*, 203 Va. 275, 123 S.E.2d 372 (1962) (no coverage where fugitive misrepresented his identity to procure permission to use dealership's car).

---

[3]The trial court properly instructed the jury that New Hampshire had to establish the nine essential elements of fraud by clear, cogent, and convincing evidence.

Here, Churchill properly concedes there is sufficient evidence to support the jury's finding that Myers obtained permission to use the truck through fraud. It is obvious that Myers had no intention of purchasing the vehicle. He not only misrepresented his actual purpose for borrowing the truck but falsely stated that he had a driver's license, auto insurance, and the means to purchase the truck. Thus, the "permission" was obtained by deception and is void.

Churchill argues, however, that if we impose a no-fraud requirement it would conflict with the omnibus statute's underlying purpose of favoring full compensation of accident victims. *See Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 112, 795 P.2d 126 (1990). We disagree. The plain language of RCW 46.29.490 extends insurance to those receiving the insured's "express or implied permission" to use the covered vehicle. When permission is procured through fraud, it is the same as if permission were never granted at all. 12 G. Couch, *supra* § 45:349.

Thus, we conclude that Myers was not covered under the omnibus provision of the New Hampshire insurance policy, and the trial court properly denied Churchill's motion for a directed verdict.

Affirmed.

WEBSTER, C.J., and FORREST, J., concur.