[No. 32858.   Department Two.   January 7, 1955.]

ARDIS I. WALLIN, as *Administrator, Appellant,* v. LEROY
KNUDTSON *et al., Defendants,* THE OHIO CASUALTY
INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 278 P. (2d) 344.

*Peterson & Vogel*, for appellant.

*Wolfstone & Lambert*, for respondent.

HILL, J.—We are here concerned with the interpretation of the so-called "omnibus clause" in a policy of liability insurance issued to LeRoy Knudtson, which clause reads as follows:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes . . . (1) any person while using an automobile owned by the Named Insured . . . provided the *actual* use is with the permission of the Named Insured. . . ." (Italics ours.)

The ultimate facts which raised the question of the liability of the insurance company under this provision of the policy were that, while Knudtson was at Fort Lewis, he gave permission to Richard O. Johns to use his car for a trip to Tacoma, and Johns drove the car to Tacoma and then proceeded toward Seattle to a point about seventeen miles north of the Tacoma city limits, where he was involved in a collision in which Kenneth L. Watson, a passenger in the other car, was fatally injured. The administratrix of Watson's estate recovered a judgment for four thousand dollars against Johns. (Knudtson was made a party defendant but was dismissed without prejudice when a motion for a stay of proceedings was made on his behalf under the sailors and soldiers relief act of 1940, as amended.) A writ of garnishment was issued against the insurance company on the theory that Johns was an insured under the quoted omnibus clause.

The insurance company answered denying indebtedness, which answer was controverted. The trial court concluded that Johns was not an additional insured under the terms of the policy and in consequence dismissed the writ of garnishment. The judgment creditor appeals.

Had the collision occurred between Fort Lewis and Tacoma or in Tacoma, there would be no question but that Johns' use of Knudtson's car was with the express permission of the owner, and that Johns was an insured within the

provisions of the policy. The questions presented here are whether Johns' use of Knudtson's car beyond Tacoma was (1) with implied permission of the owner or (2) an immaterial or permissible deviation from the express permission given by Knudtson, the named insured.

The so-called omnibus clause has been before the courts on many occasions, both before and since the addition in such clauses of the word "actual," italicized above. Whatever may have been the intent of the insurance companies, the change has had little practical significance. See *Haeuser v. Aetna Cas. & Surety Co.* (1939) (La. App.), 187 So. 684; *Vezolles v. Home Indemnity Co.* (1941), 38 F. Supp. 455. The cases both before and since the change in wording fall into three categories:

(1) The liberal construction cases, in which it is held that such a policy provision is for the protection of the public and that, for a driver's use to be with permission of the named insured within the purview of the omnibus clause, he need only to have received permission from the named insured to take and use the car in the first instance. We specifically repudiated this construction in *Yurick v. McElroy* (1949), 32 Wn. (2d) 511, 202 P. (2d) 464, where we declined "to follow the authorities which adopt the principle that an original permission to use the car includes any use thereafter made of the vehicle." For our purposes here, no re-examination of our position in this line of cases is necessary, but we do not, by reiteration of the quoted statement, desire to foreclose such a re-examination in the light of changing conditions should occasion require it. The statutes of many states requiring owners of automobiles to carry indemnity or liability insurance making an insured of anyone who has possession of an automobile with the permission, express or implied, of the owner, are placing the stamp of approval on the rationale of those cases as a matter of public policy.

(2) The strict construction cases, in which it is held that, for a driver's use to be with the permission of the named insured, that permission, express or implied, must have been

by the named insured not only to the taking and use of the car in the first instance but also to the particular use being made of the car at the time in question. The trial court seemed to be of the view that our cases of *Cypert v. Roberts* (1932), 169 Wash. 33, 13 P. (2d) 55, and *Yurick v. McElroy, supra,* align us with the courts following this rule. We will discuss those cases later, but suffice it to say at this point that both would have been decided the same way under the immaterial or permissible deviation rule, which we will presently consider.

(Parenthetically, it seems to us that the conditions under which implied permission for the particular use of a car at the time and place of a collision has been found to exist or to be a question for the jury, have achieved the same result in many cases as the immaterial or permissible deviation rule, and have made the word "strict" a misnomer. *Peterson v. Maloney* (1930), 181 Minn. 437, 232 N. W. 790; *Vezolles v. Home Indemnity Co., supra; Travelers Indemnity Co. v. Neal* (1949), 176 F. (2d) 380; *Stoll v. Hawkeye Cas. Co.* (1952), 193 F. (2d) 255.)

(3) The immaterial or permissible deviation rule permits a deviation beyond the letter but within the spirit of the express or implied permission to the use of the car given by the named insured. In these cases, it is held that:

"As regards the breadth to be given the word 'permission,' as used in a clause of the character herein considered— *where one asks for and receives permission to use the car for a purpose indicated by him in his request,* it will not be held that any deviation or departure from the purpose so indicated by him annuls the permission and puts him in the position of unlawfully using the car." (Italics ours.) 72 A. L. R. 1401.

(We would substitute "every" for "any" in the foregoing statement.)

██ It has been said that either the first or the second rule sets up a positive standard much easier of application than does the third. But despite the apparent difficulties, we believe that the rule under which an immaterial or permissible deviation (but not one specifically forbidden by the

named insured) when one has asked for and received permission to use the car for a purpose indicated in his request, does not annul the permission given, will come closer to an approximation of what the named insured and the driver intend and the risk which the insurer contemplates than either of the other rules.

The difficulty with the application of the immaterial or permissible deviation rule is that it becomes necessary to read the mind of the named insured, at least to the extent of determining whether he would have prohibited the deviation had he been asked concerning it. The circumstances and conditions under which a named insured gives permission for the use of his car are of the utmost importance in the application of this rule, and the results achieved in various cases depend upon the extent to which the elements of purpose, place, distance, and time, or a combination of them, are deemed to be material to the permission given. See *Gulla v. Reynolds* (1949), 151 Ohio St. 147, 85 N. E. (2d) 116, where there was a material deviation as to purpose, time, and distance.

For present purposes, both the implied permission and the deviation cases dealing with employees who have possession of cars for the performance of duties in connection with their employment could be disregarded because, as pointed out in an annotation in 5 A. L. R. (2d) 602, the master and servant relationship gives rise to a number of distinct and peculiar problems regarding the permissive use of the employer's vehicle which do not exist where the relationship is more of a social nature.

" . . . a general permission, or a comprehensive permission, is much more readily to be assumed where the use of the car is for social or non-business purposes, than where the relationship of master and servant exists and the usage of the car is for business purposes." *Jordan v. Shelby Mut. Plate Glass & Cas. Co.* (1943), 51 F. Supp. 240, 242; affirmed, 142 F. (2d) 52.

Neither is it important for present purposes that the application of the immaterial or permissible deviation rule is not restricted to permissions granted for purposes in-

dicated in the requests, for the rule has been applied where the use made of the car is not prohibited by the named insured but is a deviation from his express instructions. *Yorkshire Indemnity Co. v. Collier* (1949), 172 F. (2d) 116; *State Farm Mut. Auto Ins. Co. v. Birmingham Elec. Co.* (1950), 254 Ala. 256, 48 So. (2d) 41.

The uncontroverted testimony is that at about nine o'clock on the evening of January 17, 1952, Johns borrowed Knudtson's car to drive to the Fort Lewis post exchange, approximately a quarter mile from the barracks where both men were quartered. Unknown to Knudtson, Johns and a companion drove to DuPont and then to Olympia. They purchased a dozen bottles of beer at each place and consumed the beer in the car. At eleven o'clock that night, Johns returned to the barracks, woke Knudtson, who had retired, and asked if he "could borrow his car to go to Tacoma"; Knudtson replied, " 'Yes, but be careful and don't drive too fast.' " There was no further conversation; nothing was said as to where in Tacoma Johns intended to go or when the car was to be returned. Knudtson did not know that Johns had been drinking.

Johns and his companion then drove to Tacoma, where they purchased more beer and consumed it while driving around, and then went beyond Tacoma, intending to go to Seattle. Some seventeen miles beyond the Tacoma city limits the collision occurred.

There being no dispute as to the facts, the only question is as to the conclusions to be drawn therefrom, and we conclude that there was an immaterial and permissible deviation from the terms of the permission granted. We have here no specific purpose for the trip as a limitation on the consent; the car was in Johns' possession for his own purposes. We have no express limitation as to time; Knudtson had retired and would have had no further use for the car that night. It may be implied that Knudtson assumed that Johns did not intend to be absent without leave and consequently would be back in time to report for duty the next day. Within that time limit, Johns could easily have driven

to Seattle and returned to Fort Lewis. There was no limitation as to distance except as it might be implied from the indicated destination, and Johns might have cruised sixty miles within the city limits of Tacoma and still have been within the letter of the permission.

Any material limitation on the permission given Johns by Knudtson must be found, if at all, in the place or destination. There is nothing to indicate that Knudtson attached any importance to the destination indicated by Johns in his request. We conclude from the testimony that it would have made no difference to Knudtson whether Johns wanted to go north to Tacoma or Seattle or south to Olympia or Kelso, so long as the destination was one which could be reached and a return made to Fort Lewis in time to report for duty the next day, without excessive speed. No basis is suggested for an assumption that Knudtson would have refused permission for a trip to Seattle.

The time element during which the use is permitted by a named insured is, in our opinion, the element to be stressed in cases of this character, rather than distance or direction. We do not mean to imply that the destination named in a request for the use of a car may not be very material in determining whether a certain deviation is permissible. See *Liberty Mut. Ins. Co. v. Stilson* (1940), 34 F. Supp. 885, where the named insured gave permission to his son to drive from Duluth to Minneapolis but would have refused permission for him to drive to Chicago, which fact was known to his son. The deviation to Chicago was held to annul the permission. However, the circumstances of the present case seem to represent almost a *carte blanche* permission to the use of the car, subject to the implied condition that Johns be back in time for duty the next day. We can see no reason to believe that the destination indicated in the request for permission to take the car was a material factor in the permission granted. Respondent vigorously urges that appellant has failed to prove an implied permission, and the trial court so concluded. Appellant did not need to prove an implied permission to take the car to Se-

attle to justify a holding that Johns was an insured within the purview of the omnibus clause, for if Tacoma represented the limit of his permission the evidence would compel a finding that a trip to Seattle was an immaterial and permissible deviation and did not annul the permission granted.

■ When one asks permission to take a car and names the place to which he intends to drive it, and the named insured grants that permission without restriction or qualification or any circumstance suggesting an intended limitation to that particular destination, and thereafter the person taking the car changes his mind and decides to go somewhere else, the deviation may be regarded as immaterial or permissible. What constitutes an immaterial or permissible deviation has to be determined in the light of the facts and circumstances of the particular case. It seems to us that a much greater deviation, measured in terms of purpose, time, and distance, can be justified as permissible in such a case than in a situation where the named insured has delivered possession of the car to another person for a specific purpose indicated by the named insured. We so recognized in *Yurick v. McElroy, supra,* where we said (p. 518):

"It may be noted that the occasion for the expedition early on the morning of January 1st was the convenience of the Buchanans, namely, taking Mrs. Buchanan's son and his friends to their ship. The trip was in nowise concerned with the pleasure or convenience of McElroy, and the car was not loaned at his request or for his benefit. Had the car then been loaned to McElroy to use for some purpose of his own, it might be argued that, unless especially revoked, the permission granted continued, in effect, until the later hour when McElroy was to attempt to reactivate the car. This element, however, is completely lacking.

"The delivery of an automobile by the owner to a friend, to accomplish a particular mission for the owner, would not, ordinarily, without the granting of further permission to use the car for the loanee's own purposes, be considered as an implied grant of such permission."

We have heretofore indicated that the trial court considered itself bound by our decisions in *Cypert v. Roberts, supra,* and *Yurick v. McElroy, supra.* Before it can be deter-

mined whether a deviation from an express or implied permission is material or immaterial, there obviously must be a permission. The basis of our holding in the *Cypert* case was that there was no permission to use the car, express or implied. In the *Yurick* case, we recognized the distinction already referred to between delivery of an automobile by the owner to a friend to accomplish a particular mission for the owner, and delivery of the automobile by the owner to a friend for the friend's use and benefit. The *Yurick* case deals with the former situation; we are here concerned with the latter. We held in the *Yurick* case that McElroy had no permission to use the car for any purpose of his own, and there could be no necessity to discuss deviation because there was no permission. But had we considered the *Yurick* case from the standpoint of whether there had been a material or an immaterial deviation from the very limited permission given for the use of the car, we must have concluded that the use made of it by McElroy was flagrantly outside the scope of the intended or foreseeable use when that permission was given. Neither the *Cypert* nor the *Yurick* case is controlling here.

As heretofore indicated, it is our view that the trial court should have concluded that Johns' use of the car at the time of the collision was an immaterial and permissible deviation from the permission granted and did not annul that permission. The judgment dismissing the writ of garnishment is reversed, with directions to the trial court to enter a judgment for the appellant.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

February 8, 1955. Petition for rehearing denied.