[No. 8303–1–I.   Division One.   August 24, 1981.]

ROCKY MOUNTAIN FIRE AND CASUALTY COMPANY,
*Respondent,* v. GILBERT GOETZ, ET AL,
*Appellants.*

*Richard Vlosich* and *Lawrence Warren,* for appellants.

*Murray, Dunham & Waitt* and *Matt Murray,* for respondent.

JAMES, C.J.—Gilbert Goetz, his wife Alice, and his daughter Eileen appeal a declaratory judgment determining that an automobile liability policy issued by Rocky Mountain Fire and Casualty Company (Rocky Mountain) did not cover a family–owned car driven by Eileen. We affirm.

On April 7, 1978, Gilbert and Alice Goetz, as the named insureds, obtained liability insurance from Rocky Mountain "for each vehicle as shown herein, . . ." on the declaration of coverage. Exhibit 5. The application and declaration of coverage listed only two vehicles—a 1971 Ford and a 1969 Plymouth.

The Goetzes also owned a 1959 DeSoto, purchased in 1963, which had not been operated for 5 to 6 years. Gilbert Goetz restored the DeSoto to running condition during May 1978, and Eileen testified that she began driving the car about the middle of May. Although she did not have a driver's license, Eileen was permitted on a number of occasions to drive the DeSoto to school, to the Vashon ferry dock, and to the homes of friends.

On the application, Rocky Mountain's agent noted information provided by the Goetzes: "18 yr. old [Eileen] does not drive yet[.] [W]e will send info in when she gets her [driver's license]." Exhibit 1. On May 16, Alice Goetz told the agent that Gilbert Goetz was fixing the DeSoto to give to Eileen and that they wanted to add the DeSoto to their policy. But when the agent discovered Eileen had no driver's license, he advised, "'No, wait until Eileen gets her driver's license.'" The Goetzes made no further attempt to insure the DeSoto.

On July 1, 1978, Eileen drove the DeSoto to a party at a friend's home and was en route from there to a tavern in Vashon when she collided with a motorcycle driven by William Cummings. Cummings sustained personal injuries and sued the Goetzes.

The policy promises "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, . . . caused by accident and arising out of the ownership, maintenance or

use of the automobile." Exhibit 5 (Coverage A). "[T]he automobile" is defined by the policy as:

> an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, . . . if the newly acquired automobile replaces an owned automobile covered by this policy.

Exhibit 5. The DeSoto did not replace either described vehicle. The Goetzes, however, contend Rocky Mountain is liable under the "all automobiles owned" clause. They reason that the phrase "all automobiles owned" refers only to operable[1] automobiles owned by the insured. They contend that, under the particular circumstances of this case, the term "delivery date" should be construed to be the date upon which their 1959 DeSoto was restored to running condition. We do not agree.

To construe the "all automobiles owned" clause as the Goetzes urge us to do would require us to rewrite the policy and reallocate the risk of loss in a manner which neither party could reasonably have contemplated. This we will not do.

> In determining the intention of the parties to an insurance contract, terms should be understood in their plain, ordinary and popular sense. The rule that contracts of insurance are construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous, and then construing it in favor of the insured. A court may not modify clear and unambiguous

---

[1] No specific findings of fact relevant to the condition of the car prior to the time Gilbert Goetz began working on it were entered. A car is not "inoperable," however, if it can be restored to running condition with a minimum of expense and work. *Trippel v. Dairyland Mut. Ins. Co.*, 2 Wn. App. 318, 467 P.2d 862 (1970).

language in an insurance policy or revise the insurance contract under the theory of construing it.

*Pacific Indem. Co. v. Bloedel Timberlands Dev., Inc.,* 28 Wn. App. 466, 467–68, 624 P.2d 734 (1981). As is held in *Trippel v. Dairyland Mut. Ins. Co.,* 2 Wn. App. 318, 320, 467 P.2d 862 (1970), the "[n]ewly [a]cquired [a]utomobile," provision "is clear and unambiguous" and "must be given effect in accordance with its plain meaning." The purpose of the provision is to

meet the necessity for maintaining coverage in the situation arising from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of their policies, and to provide coverage for the newly acquired car at the earliest time the insured needs protection.

(Footnotes omitted.) 12 G. Couch, *Insurance* § 45:184 (2d ed. 1964).

■ The word "delivery" ordinarily signifies a handing over of physical possession. For insurance purposes, the "delivery date" of a newly acquired car is when the buyer acquires physical possession of a car or has performed all acts required of him in connection with the car's purchase, whichever occurs first. 12 G. Couch, *Insurance* § 45:195 (2d ed. 1964). We find no language in Rocky Mountain's policy which would suggest or justify giving the words any meaning other than the ordinary one. Even if a newly acquired car is inoperable when its owner obtains the car, the delivery date or date of acquisition is nevertheless the date such possession or right to possession was obtained and not a subsequent date when the car becomes operable. *Stockberger v. Meridian Mut. Ins. Co.,* __ Ind. App. __, 395 N.E.2d 1272 (1979); *Allstate Ins. Co. v. Stevens,* 445 F.2d 845 (9th Cir. 1971); 12 G. Couch, *Insurance* § 45:201 (2d ed. 1964). The "delivery date" of a vehicle is not synonymous with the restoration of an inoperable vehicle to operable condition.

It is true that the delivery date may be immaterial if a previously owned inoperable vehicle is restored to operable

condition and used as a replacement vehicle. *National Indem. Co. v. Giampapa,* 65 Wn.2d 627, 399 P.2d 81 (1965). As the majority in *Giampapa* noted, the insurer would not thereby become liable with respect to more than the number of vehicles described in the policy. Here, however, the Goetzes operated an additional vehicle.

There is also support for the view, urged by the Goetzes, that "all automobiles" should be construed to mean only operable vehicles. *See Trippel v. Dairyland Mut. Ins. Co., supra* (and cases cited therein). An insured may own one or more described vehicles and also own an inoperable vehicle which is never placed in service. If the insured then acquires an additional operable vehicle, construing "all automobiles" to mean only operable vehicles so as to provide coverage for the additional vehicle does no violence to the expectations of either party. The insured is unlikely to expect that liability insurance for an inoperable vehicle is necessary, and the insurer is subjected to no additional risk because the "inoperable" vehicle is not being driven. That is not the case here.

Because the circumstances here do involve an additional risk to the insurer, the assumption of which the insurer may regulate by clear and unambiguous language, and because the term "delivery date" is clear and unambiguous, we decline to adopt the construction urged by the Goetzes. The Goetzes acquired possession, or took delivery, of the DeSoto in 1963. Rocky Mountain did not insure all vehicles owned by the Goetzes in 1963, nor could the Goetzes give notice within 30 days of such delivery date. Rocky Mountain is not liable under the "newly acquired automobile" provision.

The Goetzes next contend the policy affords them coverage under the "Use of Other Automobiles" provision of the policy. This provides coverage as follows:

V. Use of Other Automobiles: If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private

passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, . . . with respect to said automobile applies with respect to any other auotmobile [sic], subject to the following provisions:

(a) With respect to the insurance for bodily injury liability . . ., the unqualified word "insured" includes (1) such named insured and spouse, (2) children of either who are residents of the same household as the named insured, . . .

. . .
(d) This insuring agreement does not apply:
(1) to any outomobile [sic] owned by or furnished for regular or frequent use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;

. . .
(5) to any automobile operated or used by the named insured or spouse, children of either who are residents of the named insured's household, without permission of the owner of the automobile or outside the scope of such permission.

Exhibit 5. The object of this clause is explained in *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 359, 517 P.2d 966 (1974):

The twofold purpose of the "use of other automobile" clause is: (1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of nonowned vehicles.

The Goetzes apparently contend the entire clause is inherently ambiguous and thus inapplicable, citing *Dairyland Ins. Co. v. Ward, supra*. But the ambiguity which concerned the court in *Dairyland* was that the "use of other automobile" clause did not clearly distinguish between permissive infrequent driving of vehicles owned by strangers and permissive infrequent driving of vehicles owned by members of the insured's own household. As the court explained, "The danger of the assumption of additional

risks without an added premium contemplated by the clause simply does not exist in the instant case." *Dairyland Ins. Co. v. Ward, supra* at 359. The "use of other automobile" clause is not ambiguous when applied to a fact pattern which does involve such additional risks. *Westhaver v. Hawaiian Ins. & Guar. Co.,* 15 Wn. App. 406, 549 P.2d 507 (1976).

Rocky Mountain contends it is not liable on the policy because Eileen drove the car without the permission of her parents. The trial judge found that Eileen's route was beyond the scope of her parents' permission: "Eileen Goetz did not have permission to operate the 1959 DeSoto so as to use it to go to the previously mentioned party and return to the area of a tavern in Vashon, Washington." Finding of fact No. 19. This finding is supported by substantial evidence. Alice Goetz testified as follows:

Q On the evening that the accident took place, in other words, the evening before July 1st, did you have any discussion with your daughter Eileen about her taking the DeSoto automobile?
A Yes.
Q Could you relate to the Court what took place?
A Well, she said that she was going—would like to take the car up to town for awhile.
Q Was there anything more than that?
A Well, I said all right.
Q Did you have any specific inquiry as to where she was going in town?
A No.

Gilbert Goetz testified:

Q [By Rocky Mountain's counsel] . . . Now, you had given her permission to use that vehicle before, had you, Mr. Goetz?
A On occasions.
Q But you had never given her permission, had you, Mr. Goetz, to use the car to go up to this tavern, in this area of this tavern?
A No.
Q And you had never given her permission, you, Mr. Goetz, to operate the vehicle to go to a party where there's a beer party going on on the island, did you,

sir?

A  We're talking about the same thing. No, I wouldn't.

██  Use of a vehicle may be held to be with the permission of the owner, though beyond the owner's express or implied permission, but such use must be within the spirit of the permission. This is the "immaterial or permissible deviation" rule. *Western Pac. Ins. Co. v. Farmers Ins. Exch.,* 69 Wn.2d 11, 14, 416 P.2d 468 (1966); *Eshelman v. Grange Ins. Ass'n,* 74 Wn.2d 65, 442 P.2d 964 (1968); *Wallin v. Knudtson,* 46 Wn.2d 80, 278 P.2d 344 (1955). Thus we must

> weigh the circumstances and conditions under which the insured owner gave permission for the use of his car, including the elements of purpose, place, distance, and time, and undertake therefrom to virtually read the mind of the insured to the extent, at least, of determining whether he would have prohibited the deviation had he been asked concerning it.

*Western Pac. Ins. Co. v. Farmers Ins. Exch., supra* at 15.

Here, Alice Goetz allowed Eileen to "take the car up to town for awhile." Instead, Eileen drove to a party at a friend's house where beer was provided and sometime later drove back toward town. This extended journey was within neither the letter nor the spirit of her mother's permission or her parents' expectations. We conclude that Rocky Mountain is not liable under the "use of other automobile" clause.

The judgment is affirmed.

CALLOW and ANDERSEN, JJ., concur.