[Nos. 14590–8–I; 14614–9–I;   Division One.        September 2, 1986.]
      14615–7–I.

PROGRESSIVE CASUALTY INSURANCE COMPANY, *Appellant,* v.
JAMES CAMERON, *as Administrator,* ET AL,
*Respondents.*

*Mark R. Bucklin,* for appellant.

*Susan Delanty Jones, Charles E. Peery, Preston, Thorgrimson, Ellis & Holman, Ingrid W. Hansen, Edwin J.*

*Snook, Wayne Parker, Paul F. Bonnell,* and *Richard Scott Fallon,* for respondents.

WEBSTER, J.—Appellant Progressive Casualty Insurance Company brought this declaratory action to determine whether it would have to provide coverage for damages. This case arises out of an accident in which the son of Progressive's insured, A. E. Downs, was driving a van belonging to his father's business. A. E. Downs' company had insured the van with Progressive and with General Insurance Company of America (GICA), which became a third party defendant. Progressive, GICA, and Downs' daughter, also a defendant, appeal the trial court's findings of coverage and negligence.

This case involves three insurance policies. A. E. Downs was an owner and officer of A. E. Downs Company, A. E. Downs Cabinet Company, and Downs Millwork, Inc. The 1976 Ford Econoline van was registered with A. E. Downs Company and insured under a policy with Progressive, also in the name of A. E. Downs Company. In addition to this commercial policy, A. E. Downs had a Progressive personal policy, under which the van was not insured. The van was, however, insured under another policy with GICA, under A. E. Downs Cabinet Company and Downs Millwork, Inc.

Although the van was registered with his company, A. E. Downs kept the van at his residence and used it for both recreation and business. He permitted his daughter, Brenda, and a family friend, Jeff Pringle, to use the van either in their work as his employees or for their own recreation. Whether, and to what extent, Downs' son, Steven, was permitted to drive the van was the subject of much dispute at trial.

Steven who was at least 18 years old at the time of the accident, had moved out of his father's house a few weeks before March 11, 1979. On March 10, 1979, A. E. Downs and his wife, Barbara, had left town, leaving Brenda at home. According to Brenda, Steven and Jeff came over to the Downs' residence that day for dinner, and she gave

them the keys to the van for the evening. She said she assumed that Jeff would be driving, since Steven was not permitted to drive the van. The testimony of one of Steven's housemates differed somewhat from Brenda's. He said that Brenda visited Jeff and Steven the afternoon of March 10 and offered them the keys to the van, saying she did not want them riding Jeff's motorcycle that night.

On the evening of March 10 there was a party at the house where Steven was staying. In the early morning hours of March 11, Steven took three friends in the van and headed for Crystal Mountain to go skiing. On the way, Steven drove off the road. The resulting accident killed one passenger and injured the other two.

At trial, A. E. Downs testified that he had made it clear Steven was not permitted to drive the van. However, he stated that if he had to choose between Steven driving a motorcycle or driving the van, he would permit Steven to drive the van. He said he was sure Brenda would have felt the same way.

Barbara Downs, Steven's mother, testified that Steven was permitted to drive the van "from time to time" for a "valid reason", but that he was not permitted to use the van for recreation. An employee of A. E. Downs testified that he understood Steven was not permitted to drive any of the company's automobiles.

The trial judge held that both GICA and Progressive must provide primary coverage to A. E. Downs; his daughter, Brenda Downs; his son, Steven Downs; and their friend, Jeffrey Pringle, "for actions in respect of use of the 1976 Ford Econoline Van on March 10 and 11, 1979." The court also made findings of negligence and proximate cause. Progressive, GICA, and Brenda Downs appeal, raising numerous issues.

## PROGRESSIVE COMMERCIAL POLICY

The trial court found that both Progressive policies were "ambiguous as to the designation of who are insureds and the named insured and the coverage to be provided for

the 1976 Ford Econoline Van", and therefore construed both policies in favor of coverage. However, although ambiguous provisions in an insurance contract are to be construed in favor of the insured, the court "cannot modify clear and unambiguous language in an insurance policy or revise the insurance contract under the theory of construing it." *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 528, 707 P.2d 125 (1985). The language of an insurance contract is to be interpreted as it would be understood by the average person purchasing insurance. *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 168, 588 P.2d 208 (1978).

The definition of "named insured" was spelled out clearly in the Progressive commercial policy.

"[N]amed insured" means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;

Item 1 of the declarations listed A. E. Downs Company (cabinet shop) as the named insured. "Persons Insured" were defined under the policy as follows:

With respect to the owned automobile,
(1) the named insured,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
(3) any other person or organization, but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

Brenda Downs was not "a named insured" under the policy;[1] yet she was a "person insured" because she drove the van with the permission of A. E. Downs, the owner and president of the named insured. She is covered for her use of the van as long as her use remains within the scope of that permission.

---

[1]Although a "general change endorsement" was added to the policy naming Brenda L. Downs "as driver", Brenda did not thereby become a "named insured" as that term is defined in the policy. The endorsement was simply further evidence that she had permission to use the van.

■ As Brenda was not a named insured, her permission alone would be insufficient to make Steven a "person insured" under the policy. To determine whether Steven is covered, the issue is whether Steven drove with the permission of his father, the president of the named insured. Permission may be either implied or express. *Safeco Ins. Co. v. Pacific Indem. Co.,* 66 Wn.2d 38, 43, 401 P.2d 205 (1965). When an insured gives permission to someone to drive an automobile, and that person in turn gives permission to someone else, the insured's permission to the second permittee may be implied if the insured should have anticipated that, "in view of the scope and nature of the permission granted (even if less than unfettered dominion), and because of the permittee's *relationship to another,* the permittee will allow that other to use the car". *Safeco Ins. Co. v. Pacific Indem. Co., supra* at 45 (quoting *State Farm Mut. Auto Ins. Co. v. Williamson,* 331 F.2d 517, 520 (9th Cir. 1964)); *Grange Ins. Ass'n v. Ochoa,* 39 Wn. App. 90, 94, 691 P.2d 248 (1984). Although Barbara, Brenda, and A. E. Downs testified that A. E. Downs did not want Steven to drive the van and that everyone, including Brenda, knew that, there was testimony by A. E. Downs to support the trial court's finding that A. E. Downs would expect Brenda to lend Steven the van if Steven would otherwise ride a motorcycle.

However, even if Steven had his father's implied permission to drive the van, his use of the van at the time of the accident must have been within the scope of his father's permission in order for this court to find coverage under the policy. *Grange Ins. Ass'n v. Ochoa, supra* at 95. The scope of permission may be held to extend beyond the owner's express or implied permission, but the permittee's use must be within the spirit, if not the letter, of that permission. *Rocky Mt. Fire & Cas. Co. v. Goetz,* 30 Wn. App. 185, 192, 633 P.2d 109 (1981). When the use constitutes more than an immaterial or permissible deviation from the owner's permission, coverage will not be found. *Eshelman v. Grange Ins. Ass'n,* 74 Wn.2d 65, 69, 442 P.2d 964 (1968).

Even if A. E. Downs' implied permission extended to Steven's use of the van, rather than a motorcycle, for a night on the town, it is difficult to see how a skiing trip to Crystal Mountain early the next morning would be within the scope of that permission. This is especially true since Steven Downs took three passengers on his skiing trip; it is doubtful that he would have taken Jeff Pringle's motorcycle on such a trip if the van had not been available. There was no evidence that A. E. Downs should have anticipated that his son would take the van on a skiing trip if he were permitted to use it on the night of the party. The trial court erred in finding coverage for Steven under this policy.

Brenda Downs and Jeff Pringle both had permission to use the van recreationally. They are covered as "persons insured" for their use of the van, so long as their use remains within the scope of A. E. Downs' permission. The trial court's finding that Brenda had her father's permission to lend the van to Steven if Steven threatened to ride a motorcycle supports the conclusion that Brenda is covered for her March 10 entrustment of the van. However, no evidence or allegations of facts were presented that if Jeff Pringle negligently entrusted the van to Steven, he was acting within the scope of his permission. Since Jeff owned the motorcycle Steven threatened to ride, A. E. Downs presumably would not expect him to entrust the van to Steven to prevent Steven from riding that motorcycle. The trial court erred in finding coverage for Jeff. The overwhelming weight of the evidence showed that Pringle knew Steven was not permitted to drive the van.

## PROGRESSIVE PERSONAL POLICY

As with the Progressive commercial policy, the trial court found the language of the Progressive personal policy ambiguous and therefore construed it to find coverage.

A. E. Downs, as an individual, was the named insured on the personal policy. Because the van was not insured under the personal policy, the trial court found coverage under the definition of "Persons Insured" "with respect to a non–

owned automobile":

(1) the named insured, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission of the owner and is within the scope of such permission . . .

The above clause cannot be construed to provide coverage to either Steven, Brenda, or Jeff Pringle since none of them is a named insured under the policy. "Named Insured" is defined in the Progressive personal policy as in the Progressive commercial policy, and here means only A. E. Downs and his wife. However, even these named insureds are not covered here because the van is neither an "owned automobile" nor a "non–owned automobile" under the policy definitions. An "owned automobile" means "a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded." A "non–owned automobile"

means a private passenger, farm or utility automobile or a trailer, not owned in full or in part by or registered in the name of the named insured or any resident of the household thereof, or hired as part of a frequent use of hired automobiles by or furnished for regular use to the named insured, a resident of the household thereof or a private chauffeur or domestic servant employed in connection therewith;

The van was not a "non–owned automobile" because it was furnished for regular use to the named insured and Brenda, a resident of the named insured's household. The trial court erred in finding any coverage under this policy.

### THE GICA POLICY

Under the GICA policy, "Persons Insured" include the named insured and

any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . .

Alfred E. Downs, d/b/a A. E. Downs Company, was designated the named insured and the van was an insured vehi-

cle under the GICA policy. The GICA provisions are therefore nearly identical to the provisions of the Progressive commercial policy. An analysis of those provisions leads to the same result under both policies: coverage would exist for A. E. Downs and Brenda for their use of the van, but there is no coverage for Steven Downs or Jeff Pringle.

### PRIMARY AND EXCESS COVERAGE

The trial court found that the GICA policy and the Progressive commercial policy both provided primary coverage while the Progressive personal policy provided excess liability coverage. In so finding, the trial court did not correctly construe the policy provisions.

The GICA policy had the following "Other Insurance" provision:

> If, applicable to the loss, there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured (in this or any other carrier), there shall be no insurance afforded hereunder as respects such loss; except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.

This is an excess coverage clause. *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 13, 416 P.2d 468 (1966).

Both Progressive policies had the following "Other Insurance" clause:

> If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall

be excess insurance over any other valid and collectible insurance, and provided that the insurance with respect to a newly acquired automobile does not apply to any loss against which there is other valid and collectible insurance.

This is a pro rata clause, except with respect to nonowned automobiles. *Western Pac. Ins.,* at 13.

■ Where two insurance policies cover the same risk, yet one policy contains an excess insurance clause and the other contains a pro rata clause, the latter policy provides primary coverage. *General Ins. Co. of Am. v. State Farm Ins. Co.,* 75 Wn.2d 200, 203, 449 P.2d 391 (1969); *Western Pac. Ins. Co. v. Farmers Ins. Exch., supra* at 17; *Schab v. State Farm Mut. Auto. Ins. Co.,* 41 Wn. App. 418, 422, 704 P.2d 621 (1985). Resort is made to the excess policy only after the pro rata policy is exhausted. *Orsi v. Aetna Ins. Co.,* 41 Wn. App. 233, 242, 703 P.2d 1053 (1985). Thus, the Progressive commercial policy provides primary coverage. Under its own terms, GICA would then be liable for damages in excess of Progressive's limit of liability but only in an amount sufficient to afford the insured a combined limit of liability equal to that of GICA's policy. As it happens, GICA will not be liable for any coverage since both the GICA and Progressive commercial policies have a $300,000 limit of liability.

■ Respondents argue that the GICA limitation of excess liability should be unenforceable as a matter of policy because in effect the clause permits GICA to escape providing any coverage whatsoever. However, there is no Washington statutory or case law policy concerning liability coverage to support their argument. Cases permitting "stacking" of uninsured motorist coverage, *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977); *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975), were based on the public policy expressed in RCW 48.22.030 specifically concerning uninsured motorist coverage—and have since been overruled

by RCW 48.22.030(5). Furthermore, RCW 48.22.030(6)[2] appears to be an expression of public policy in favor of enforcing excess clauses like GICA's.

Other insurance clauses which result in no excess coverage have been upheld in Washington. *E.g., Miller v. Allstate Ins. Co.,* 66 Wn.2d 871, 405 P.2d 712 (1965); *Schab v. State Farm Mut. Auto. Ins. Co., supra.* We are hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 481, 687 P.2d 1139 (1984). We note that even under GICA's excess clause, the insureds will receive the coverage contracted for under both policies—$300,000 liability coverage. *See Schab,* at 424. We therefore decline to disregard the clear provision of the policy.

## NEGLIGENCE FINDINGS

Although a tort action[3] was pending at the time Progressive brought this suit, the trial court found that Brenda Downs negligently entrusted the van to Steven Downs and that her negligence was the proximate cause of the accident. The court also found that Steven's use of the van at the time of the accident was not within the scope of the family car doctrine and that Jeffrey Pringle was not negligent "in respect of Steven Downs' use of the van." The appellants argue that the trial court should not have made these findings in this declaratory judgment action. We agree.

A request for declaratory relief may be brought to determine the rights of parties under a contract, including an insurance contract. RCW 7.24.020. The declaratory judgments act is to be liberally construed, *DiNino v. State*

---

[2]RCW 48.22.030(6) reads: "The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages."

[3]*See Cameron v. Downs,* 32 Wn. App. 875, 650 P.2d 260 (1982).

*ex rel. Gorton,* 102 Wn.2d 327, 330, 684 P.2d 1297 (1984), and the court may determine issues of fact "necessary or incidental" to the declaration of legal relations, *National Indem. Co. v. Smith–Gandy, Inc.,* 50 Wn.2d 124, 128, 309 P.2d 742 (1957). Here, issues of negligence and proximate cause need not have been decided in order to determine whether insurance coverage exists. To resolve the question of coverage, the trial court needed only to determine whether the defendants would be covered by the policies *if* they were to be found negligent. Although it was proper for the court to determine factual issues of permission and scope of permission insofar as was necessary to determine who were "persons insured" under the policies, the court should have left the resolution of negligence and proximate cause questions to the trial court in the underlying tort action. *United Pac. Ins. Co. v. Guaranty Nat'l Ins. Co.,* 97 Wn.2d 139, 146, 641 P.2d 173 (1982); *Grange Ins. Ass'n v. Ochoa,* 39 Wn. App. 90, 96, 691 P.2d 248 (1984). By making the negligence findings, the court denied the appellants their right to a jury trial, which they had requested in the other action.

We therefore reverse in part. We find primary coverage under the Progressive commercial policy for A. E. Downs and Brenda Downs, but not Steven Downs or Jeff Pringle. Neither the GICA policy nor the Progressive personal policy provide any coverage for the accident.

Paragraphs 4 and 5 of the judgment, findings of fact 23, 25, 26, 27, 28, 29 and 30, and conclusions of law 3, 4 and 5, insofar as they concern negligence, negligent entrustment, and the family car doctrine, are vacated.

WILLIAMS and COLEMAN, JJ., concur.