[No. 8335-7-III. Division Three. July 16, 1987.]

VICTORIA R. MORITZ, *Individually and as Personal Representative, Appellant,* v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, INC., *Respondent.*

*James S. Scott, Smith, Scott & Mazzola,* and *Paul N. Luvera,* for appellant.

*Walter G. Meyer* and *Meyer & Fluegge,* for respondent.

GREEN, J.—Victoria R. Moritz, individually and as personal representative of the estate of Richard Charles Mor-

itz, appeals a summary judgment in favor of St. Paul Fire and Marine Insurance Company, Inc. The only issue presented is the question of coverage. We affirm.

Mr. Sears was employed by Flowing M, Inc., a business which installs heating and air conditioning systems. In connection with his employment, Mr. Sears was given the use of a GMC pickup. Flowing M maintained the vehicle and provided both fuel and insurance. According to John Morgan, the owner of Flowing M, the company had an oral general policy regarding the use of company vehicles. Mr. Morgan stated:

When the employee was really what we felt a good employee then he would get the privilege of taking the truck directly from the shop to his home and back to the shop, no stops, no passengers, absolutely no stops of any kind. That was the policy.

According to Mr. Morgan, any employee who violated this policy would be terminated. Further, Flowing M had fired employees who had used company vehicles to facilitate drinking.

Also, at an employees' meeting on August 29, 1980, the use of company vehicles was discussed. At that meeting, Jack Lambert, part owner of the company, outlined the company policy for the employees:

Corp. Trucks & Equip.
1. No riders except employees.
2. To be used for travel to and from job only.
3. Use on off time to be OKed in advance by office.

The next day, August 30, Mr. Sears drove the company GMC pickup truck from his home in Selah to the Flowing M office in Yakima. He then drove to Toppenish to pick up co-worker Mark Welch and they both drove to a project in Sunnyside where they worked from 6 a.m. to approximately 2:30 p.m. Messrs. Welch and Sears then spent several hours first at a Sunnyside bar and then at Mr. Welch's home. After leaving Mr. Welch's home, Mr. Sears proceeded on Highway 97, and approximately one–quarter of a mile south of Union Gap he collided with a 1977 Sportscoach

motorhome owned and driven by Richard C. Moritz. Both drivers were killed. At the time of his death, Mr. Sears' blood alcohol level was 0.24 percent.

St. Paul Fire and Marine Insurance Company insured the 1979 GMC pickup Mr. Sears was driving. The policy contained comprehensive auto liability protection, which provided in pertinent part as follows:

How this agreement protects your business
We've designed this agreement to protect your business against two kinds of liability claims involving autos. Claims resulting from bodily injury to others. And claims resulting from damage to other people's property.

. . .
What this agreement covers
Your auto liability protection covers you and other persons protected under this agreement against claims for bodily injury or damage to tangible property resulting from an accident. . . .

. . .
Who is protected under this agreement
Here's a list of "protected persons" and the limitations on their coverage under this agreement.
1. You are protected under all circumstances covered by this agreement.
2. *Any person you allow to use an auto you own, rent or borrow* is protected except: [exceptions are miscellaneous and irrelevant].

(Italics ours.)

On September 4, 1981, Victoria Moritz commenced legal action against Flowing M and the estate of Daniel Sears in her capacity as her husband's personal representative, as guardian ad litem for their two children, and on behalf of herself. The court granted Flowing M's motion for summary judgment on the ground there was no issue of fact regarding whether Mr. Sears was within the scope of his employment when the accident occurred. The summary judgment was affirmed by this court in an unpublished opinion filed on November 29, 1984.

On January 16, 1986, a jury returned a verdict in favor of Mrs. Moritz against the estate of Daniel Sears in the

amount of $766,680. Mrs. Moritz sought payment of that judgment pursuant to the St. Paul insurance policy covering vehicles owned by Flowing M. St. Paul refused to pay. Thereafter, Mrs. Moritz commenced this action for declaratory judgment. Both parties moved for summary judgment on the issue of coverage. The court granted St. Paul's motion. Mrs. Moritz then sought direct review by the Supreme Court. It transferred the appeal to this court.

Mrs. Moritz contends the policy between St. Paul and Flowing M covered any person Flowing M allowed to use any vehicle it owned, rented or borrowed. Since the policy is unambiguous, she asserts the court erred in construing the term "allow" to mean "permit" and then employing a "scope of permission" analysis. She argues the court erred in comparing the language in the policy to other cases dealing with omnibus or permissive use clauses because St. Paul deliberately revised its policy to delete the scope of permission exclusion. We disagree.

██ The terms used in an insurance policy must be understood in their plain, ordinary and popular sense. *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 670, 689 P.2d 68 (1984). *Webster's Third New Int'l Dictionary* 58 (1969) defines "allow" as: "4: permit . . . a: to permit by way of concession . . . b: to permit by neglecting to restrain or prevent . . ." *See also Roget's Int'l Thesaurus* 804, 1123 (4th ed. 1977). It is clear "permit" is synonymous with "allow".

Also, Washington cases have used the words "permission" and "allow" interchangeably when discussing insurance contracts. *See Safeco Ins. Co. of Am., Inc. v. Pacific Indem. Co.*, 66 Wn.2d 38, 45, 401 P.2d 205 (1965) (quoting *State Farm Mut. Auto. Ins. Co. v. Williamson*, 331 F.2d 517, 520 (9th Cir. 1964)); *Grange Ins. Ass'n v. Ochoa*, 39 Wn. App. 90, 93–94, 691 P.2d 248 (1984).

Since "allow" is synonymous with "permit", the question then becomes whether the court erred in relying on Washington case law on "permissive use" or omnibus clauses in reaching its decision. Mrs. Moritz contends that in the

absence of specific language limiting coverage to uses "within the scope of permission", the policy must be read to cover any person allowed to use the vehicle for whatever purpose. We disagree.

In *Eshelman v. Grange Ins. Ass'n,* 74 Wn.2d 65, 442 P.2d 964 (1968), Mr. Shephard, an employee of Mr. and Mrs. Pease, was given permission by the Peases to use their car to drive to and from work, but was told specifically not to use the car for any other purpose. One evening Mr. Shephard began drinking and the following morning he was involved in an accident while driving the car 250 miles from the Peases' farm. The Peases' policy of casualty insurance provided:

> . . . the unqualified word "insured" includes the named insured, . . . and also includes *any person while using the automobile . . . provided the actual use of the automobile is by the named insured . . . or with the permission of [the named insured].*

*Eshelman v. Grange Ins. Ass'n, supra* at 66. The policy did not contain any language limiting coverage to uses "within the scope of permission." *See also Wallin v. Knudtson,* 46 Wn.2d 80, 81, 278 P.2d 344 (1955).

The court in *Eshelman,* at pages 67–68, set out three approaches for interpreting permissive use clauses: (1) Strict or conversion rule. For the use of the vehicle to be with the permission of the insured within the meaning of the omnibus clause, the driver must be using it, at the time of the accident, exactly within the scope of the permission given, during the time limits expressed and within the geographic limits contemplated. (2) Liberal rule. The employee or permittee need only have received permission to take the vehicle in the first instance; and any use while it remains in his possession is "with permission," though that use may be for a purpose not contemplated by the insured when he parted with possession. This is called the "hell or high water" rule. (3) Middle ground rule. It is necessary in each case to consider the extent and effect of the particular deviation involved. A material deviation voids the initial

permission and the omnibus clause is not operative. A minor deviation leaves the permission unaffected so that the omnibus clause is operative. *See* 12 G. Couch, *Insurance* §§ 45:464–:479, at 845–75 (2d ed. 1981).

■ *Eshelman* then held at pages 68–69 that Washington follows the "middle ground" rule, refusing to adopt the liberal rule, but allowing coverage when the deviation from permissible use is relatively minor. *See also Western Pac. Ins. Co. v. Farmers Ins. Exch.,* 69 Wn.2d 11, 14–15, 416 P.2d 468 (1966); *Foote v. Grant,* 56 Wn.2d 630, 633, 354 P.2d 893 (1960); *Wallin v. Knudtson, supra* at 82–84. This rule permits a deviation beyond the letter, but within the spirit of the express or implied permission to the use of the motor vehicle given by the named insured. *Eshelman v. Grange Ins. Ass'n, supra; Western Pac. Ins. Co. v. Farmers Ins. Exch., supra* at 14; *Foote v. Grant, supra* at 633; *Progressive Cas. Ins. Co. v. Cameron,* 45 Wn. App. 272, 277, 724 P.2d 1096 (1986); *Rocky Mt. Fire & Cas. Co. v. Goetz,* 30 Wn. App. 185, 192, 633 P.2d 109 (1981). The court must weigh the circumstances under which the insured owner gave permission for the use of his vehicle including any limits on purpose, place, distances and time, and "undertake therefrom to virtually read the mind of the insured to the extent . . . of determining whether he would have prohibited the deviation had he been asked concerning it." *Western Pac. Ins. Co.,* at 15. *Eshelman* makes it clear the terms "allow" or "permit" carry with them that the use of the vehicle must be within the scope of that allowance or permission given even though the policy does not expressly contain the language "the use must be within the scope."

Here, it is clear from the facts Mr. Sears was acting outside the scope of his permission when the accident occurred. Flowing M permitted Mr. Sears to only drive the truck directly from the shop to his home and back with no stops of any kind. Use of the truck on off time was to be approved in advance. Also, Flowing M had fired employees who had used company vehicles to facilitate drinking.

St. Paul argues the prior judgment in favor of Flowing M

is also determinative of the question of insurance coverage. We disagree. The prior judgment merely resolved the issue of whether Mr. Sears was acting "within the scope of employment". The issue of "acting within the scope of employment" is different from "acting within the scope of permission" so as to permit insurance coverage. The omnibus clause or permissive use clause of a policy may extend coverage beyond the limitations which would otherwise exist under the law of principal and agent. *Foote v. Grant, supra* at 632.

Finally, *Safeco Ins. Co. of Am. v. Davis,* 44 Wn. App. 161, 721 P.2d 550 (1986) and *United Pac. Ins. Co. v. Larsen,* 44 Wn. App. 529, 723 P.2d 8, *review denied,* 107 Wn.2d 1012 (1986), relied on by Mrs. Moritz, are both distinguishable from the instant case on several points. (1) Both of those cases dealt with exclusionary provisions in the policy and the rules of construction and interpretation of such provisions are different than those for inclusive language. (2) The insurers issued their policies in these two cases to exclude coverage "'for any person using a vehicle without a reasonable belief that the person [was] entitled to do so.'" *Larsen,* at 531; *Davis,* at 163. (a) This language is different from that used in the policy in the instant case. Also, at least in *Larsen,* at 532, this language replaced the standard omnibus clause. In both cases the court found this new language ambiguous and less explicit. (b) The focus of the new language in those cases was placed on the subjective belief of the permittee while that of standard omnibus clauses and of the instant case is on the objective belief of the insured. (3) *Davis* did not arise in a business setting and while *Larsen* involved an employer/employee relationship, the employer had granted the employee permission to drive the vehicle for social purposes, *i.e.,* to visit his sick mother. The master/servant relationship raises distinct and peculiar problems regarding permissive use of the employer's vehicle which does not exist with a situation where the relationship involved is nonbusiness or social. *Foote v. Grant, supra* at 633; *Wallin v. Knudtson, supra* at 84.

Here, Mr. Sears was granted permission to use the vehicle as an employee in performance of his employment only.

Affirmed.

Munson, J., concurs.

Thompson, A.C.J. (dissenting)—I respectfully dissent. The sole issue is whether the trial court erred in determining Mr. Sears was not an insured under the St. Paul policy at the time of the accident. The court ruled the word "allow", contained in the relevant insurance contract clause, is synonymous with "permit", and proceeded to find Mr. Sears was not within the scope of the permission granted by the named insured when the accident occurred and therefore not covered by the St. Paul policy. I disagree with the trial court's construction.

An omnibus clause is an inclusionary clause; inclusionary clauses in an insurance policy should be liberally construed to provide coverage for those who can reasonably be embraced within the terms of the clause. *Riley v. Viking Ins. Co.*, 46 Wn. App. 828, 829, 733 P.2d 556 (1987); *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wn. App. 32, 36, 627 P.2d 152, *review denied*, 95 Wn.2d 1032 (1981). Further, a court cannot modify clear and unambiguous language in an insurance policy under the guise of construing or interpreting it. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 528, 707 P.2d 125 (1985). By interpreting "allow" to mean "permit", and then assigning the case law defined legal significance of scope of permission in omnibus clauses to this contract, the trial court has failed to abide by these rules. The clause made an additional insured any person the named insured allowed to use its vehicle. It did not expressly or impliedly put limits on that coverage.

In addition, it is not the case that "allow" is synonymous with "permit". *Webster's Third New Int'l Dictionary* 58 (1969) defines allow as: "4: permit . . . a: to permit *by way of concession* . . . b: to permit *by neglecting to restrain or prevent*". (Italics mine.) This synonymous use of allow

indicates a *kind* of permission, without attempts at setting limits. On the other hand, "permit" is defined in *Webster's,* at 1683, as "1: to consent to *expressly or formally*". (Italics mine.) Additionally, *Random House College Dictionary* 37 (rev. ed. 1975) explains that while "allow and permit are often interchangeable, . . . *permit is the more positive. Allow implies absence of an attempt, or even an intent, to hinder. Permit suggests formal or implied assent."* (Italics mine.) Thus, the trial court had to interpret and construe the general word "allow" to be more restrictive than normally understood by the average person. An insurance contract should not be given such a "strained or forced construction", but must be read as the average person would read it. *See E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

St. Paul contends Washington cases have used the words "permission" and "allow" interchangeably when discussing insurance contracts, citing *Safeco Ins. Co. of Am., Inc. v. Pacific Indem. Co.,* 66 Wn.2d 38, 45, 401 P.2d 205 (1965) (quoting *State Farm Mut. Auto. Ins. Co. v. Williamson,* 331 F.2d 517, 520 (9th Cir. 1964)) and *Grange Ins. Ass'n v. Ochoa,* 39 Wn. App. 90, 93–94, 691 P.2d 248 (1984). However, those courts' use of the terms do not support St. Paul's contention. In *Safeco,* and in *Grange,* the issue was whether the scope of permission *initially granted* to a father to drive a vehicle included the implied permission to *allow* a son to drive the vehicle. The first question, scope of permission, was concerned with setting parameters. The second question, the allowance, was not synonymous with the first, and not at all concerned with parameters. As noted, "allow" implies absence of an attempt, or even an intent, to hinder, but "permit" suggests formal or implied assent. This difference in meaning is consistent with the context in which the two words have been used in the cited cases, and does not support St. Paul's contention the words may be used interchangeably in insurance contracts.

Motor vehicle liability policies are required to include an omnibus clause, RCW 46.29.490(2)(b), and the liability of

the insurer becomes absolute when injury or damage occurs which is covered under that policy. RCW 46.29.490(6)(a); *Tibbs v. Johnson,* 30 Wn. App. 107, 111, 632 P.2d 904 (1981). Unlike other types of contracts, insurance policies must be interpreted in light of important public policy and statutory considerations. *Mission Ins. Co. v. Guarantee Ins. Co.,* 37 Wn. App. 695, 699, 683 P.2d 215 (1984); *Tibbs,* at 110. While RCW 46.29.490(2)(b) only *requires* coverage for persons using a vehicle with express or implied *permission* of the named insured, and permission is limited by the scope granted by the named insured, *Eshelman v. Grange Ins. Ass'n,* 74 Wn.2d 65, 442 P.2d 964 (1968), an insurance policy is not limited by the minimum requirements of the statute. *Liljestrand v. State Farm Mut. Auto. Ins. Co.,* 47 Wn. App. 283, 290, 734 P.2d 945 (1987).

St. Paul has used language providing broader coverage than it may have subjectively intended. However, the record clearly indicates St. Paul knew how to restrict coverage by use of standard "scope of permission" omnibus clause terminology. St. Paul replaced standard omnibus clause language with the language at issue here. This change in language was relatively new. Change of policy language is significant and binding on insurance companies. *United Pac. Ins. Co. v. Larsen,* 44 Wn. App. 529, 532, 723 P.2d 8, *review denied,* 107 Wn.2d 1012 (1986). Judicial construction of clear, unambiguous language, setting no scope of permission limitations on coverage, that reads into policy terms an insurance carrier's later expressed subjective intent in effect allows reformation of an insurance contract in order to deal with specific facts. Such reformation should not be permitted. *Mission Ins.,* at 699. Construing this contract language to preclude coverage is at odds with the public policy of this state as expressed by our Legislature to protect the traveling public and provide insurance coverage where persons are injured on the state's highways. By its plain language, it covers persons who are allowed to use an auto owned by the named insured, and no exceptions are enumerated nor implied by any usual "scope of

permission" terminology.[1] An inquiry into whether as between the employer and employee any restrictions were placed on the allowed use is irrelevant.

Mr. Sears was allowed to use an auto owned by the named insured. Thus, he was an insured under the policy issued by St. Paul Fire and Marine Insurance Company, Inc. I would reverse granting summary judgment in the declaratory action and would direct the entry of judgment finding Mr. Sears was covered by the St. Paul insurance policy.

---

[1]*See, e.g., Eshelman v. Grange Ins. Ass'n, supra* at 66, which contained language that specified the "actual use of the automobile" by another must be "with the permission" of the named insured. Although the policy did not contain language specifically limiting coverage to uses within the scope of permission, the language used was more specific than the term "allow" and connotes express or implied parameters to the permission granted.